UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADAM WAYNE TYLER ROBERTS,

     Plaintiff,

v.                        Case No.: 8:18-cv-1062-T-33TGW

PAM BONDI, and
RICK SWEARINGEN,

     Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Pam Bondi and Rick Swearingen's Motion to Dismiss (Doc. # 27), filed on July 2, 2018. Pro se Plaintiff Adam Wayne Tyler Roberts responded on July 30, 2018. (Doc. # 34). For the reasons that follow, the Motion is granted in part and denied in part as set forth below.

**I.**    **Background**

Roberts initiated this action on May 1, 2018, asserting various claims against Bondi and Swearingen. (Doc. # 1). He seeks a declaration that a recently enacted state statute — Section 790.222, Fla. Stat. — violates article X, section 6 of the Florida Constitution as well as the Second, Fifth, and Fourteenth Amendments of the United States Constitution.

(Id.). Furthermore, Roberts insists the statute is void for vagueness.

Section 790.222 prohibits bump-fire stocks: "A person may not import into this state or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump-fire stock. A person who violates this section commits a felony of the third degree." Fla. Stat. § 790.222. This section also provides:

> [T]he term 'bump-fire stock' means a conversion kit, a tool, an accessory, or a device used to alter the rate of fire of a firearm to mimic automatic weapon fire or which is used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device.

Id.

According to Roberts, the term "bump-fire stock" as defined by the statute "includes a common firearm accessory for AR-15 and other semiautomatic rifles that are owned by tens of thousands of Floridians throughout the state." (Doc. # 1 at ¶ 7). Furthermore, "[a]ny fire control modification that allows the trigger of a firearm to be pulled faster than it could before fits the definition of 'Bump Fire Stock' under Fla. Stat. § 790.222 and therefore would be completely prohibited." (Id. at ¶ 12). The Complaint asserts "[m]illions of hunting rifles and handguns would fit the definition of

'Bump Fire Stock.' Many of these modifications are permanent." (Id.).

Roberts alleges that he "owns firearms a Bump Fire Stock may be installed on and in." (Id. at ¶ 32). He "also owns Bump Fire Stocks, and other firearms that may be construed to be Bump Fire Stocks through trigger modifications and fire control group upgrades." (Id.).

Bondi and Swearingen filed the instant Motion to Dismiss on July 2, 2018. (Doc. # 27). Roberts has responded (Doc. # 34), and the Motion is ripe for review.

## II.  **Legal Standard**

The Court construes pro se pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). But "a pro se litigant is still required to conform to procedural rules, and a district judge is not required to rewrite a deficient pleading." McFarlin v. Douglas County, 587 F. App'x 593, 595 (11th Cir. 2014).

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences

3

from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. <u>Analysis</u>

Defendants raise various arguments for dismissal of the Complaint. The Court will address each argument in turn.

### A. <u>Bondi's Immunity</u>

First, Bondi argues that the claims against her should be dismissed because she is immune to suit. (Doc. # 27 at 6-11). According to Defendants, "[t]he Eleventh Amendment bars this Court from exercising jurisdiction over Plaintiff's suit

against the Attorney General because she has no authority to enforce the challenged statute and thus lacks the requisite connection to the statute under Ex parte Young." (Id. at 11). The Court agrees with Defendants.

Ex parte Young, 209 U.S. 123 (1908), provides a narrow exception to the sovereign immunity established by the Eleventh Amendment. Specifically, sovereign immunity does not apply to "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999)(citations omitted). This is because the "Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law." Id.

But "federal courts have refused to apply Ex parte Young where the officer who is charged has no authority to enforce the challenged statute." Id. at 1342 (citations omitted). "Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct." Id. at 1341.

5

Here, the challenged law is a criminal statute. Under Florida's Constitution, each "state attorney shall be the prosecuting officer of all trial courts in [her respective] circuit." Fla. Const. art. V, § 17. As another district court succinctly put it, "[t]he State Attorney enforces criminal law in Florida, not the Florida Attorney General." Freiberg v. Francois, No. 4:05CV177-RH/WCS, 2006 WL 2362046, at *6 (N.D. Fla. Aug. 15, 2006). And Defendants are correct that this rule's exceptions — that the Attorney General may prosecute "violations of municipal ordinances" and, through the Statewide Prosecutor, violations of certain enumerated criminal laws that occur in two or more judicial circuits — do not apply here. (Doc. # 27 at 8-9)(citing Fla. Const. art. V, § 17 and art. IV, § 4(b)).

True, Bondi, as Attorney General, is "entitled to be heard" when a state statute is challenged as unconstitutional. Fla. Stat. § 86.091 ("If the statute, charter, ordinance, or franchise is alleged to be unconstitutional, the Attorney General or the state attorney of the judicial circuit in which the action is pending shall be served with a copy of the complaint and be entitled to be heard."). But that does not mean enforcing this statute is her duty for Ex parte Young purposes. Furthermore, "[i]t has

6

long been recognized that the [Attorney General] is not a necessary party each time the constitutionality of a statute is drawn into question. The [Attorney General] is thus not affirmatively required to intervene every time an entity challenges the constitutionality of a statute." Mallory v. Harkness, 923 F. Supp. 1546, 1553 (S.D. Fla. 1996)(citations omitted), aff'd, 109 F.3d 771 (11th Cir. 1997)(unpublished table decision).

Because Bondi does not have the authority to enforce Section 790.222, she is not a proper defendant in this action. See Freiberg, 2006 WL 2362046, at *6 ("Attorney General Crist has no role in the licensing of naturopaths or in the enforcement of the criminal statute. He is not a proper Defendant. . . . [T]he only proper Defendant for the challenge to the criminal statute is William 'Willie' N. Meggs, State Attorney for the Second Judicial Circuit."). All Counts are dismissed to the extent they are brought against Bondi.

   **B.   Takings Claims: Counts 1-4**

Defendants next argue that Roberts' takings claims, under article X, section 6(a) of the Florida Constitution and the Fifth Amendment of the United States Constitution, should be dismissed. In those Counts, Roberts argues the bump-fire stock ban is "in-effect a taking" for which "no compensation

[has been] provided." (Doc. # 1 at ¶¶ 35, 36, 41, 48, 49, 55). He challenges the constitutionality of the statute both facially and as applied to himself.

The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, article X, section 6(a) of the Florida Constitution provides: "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." Fla. Const. art. X, § 6(a). The Florida Supreme Court has "interpreted the takings clauses of the United States and Florida Constitutions coextensively." St. Johns River Water Mgmt. Dist. v. Koontz, 77 So. 3d 1220, 1226 (Fla. 2011), rev'd on other grounds, 570 U.S. 595 (2013); see also Chmielewski v. City of St. Pete Beach, 890 F.3d 942, 949 (11th Cir. 2018)("Because Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis.").

According to Defendants, these claims should be dismissed because "Section 790.222 does not effect any taking; instead, it prohibits the possession of contraband." (Doc. # 27 at 13). Defendants are correct. The Takings Clause

8

"does not entitle all aggrieved owners to recompense, only those whose property has been 'taken for a public use.'" AmeriSource Corp. v. United States, 525 F.3d 1149, 1152 (Fed. Cir. 2008). "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." Id. at 1153; see also Fesjian v. Jefferson, 399 A.2d 861, 866 (D.C. 1979)("Such a taking for the public benefit under a power of eminent domain is, however, to be distinguished from a proper exercise of police power to prevent a perceived public harm, which does not require compensation. That the statute in question [which required the disposal of unregisterable guns that were capable of shooting over twelve rounds without reloading] is an exercise of legislative police power and not of eminent domain is beyond dispute." (citations omitted)).

"The police power doctrine may apply where the government acts in order to protect the general health, safety and welfare of its citizens." Akins v. United States, 82 Fed. Cl. 619, 622 (Fed. Cl. 2008)(citations and internal quotation marks omitted). "A long line of federal cases has authorized the taking or destruction of private property in the exercise of the state's police power without compensation." Wiese v. Becerra, 263 F. Supp. 3d 986, 995 (E.D. Cal. 2017). Indeed,

as far back as the 1880s, the Supreme Court recognized the difference between a compensable taking and an exercise of the police power. See Mugler v. Kansas, 123 U.S. 623, 668-69 (1887)("A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit.").

Section 790.222 is an exercise of the legislative police power, not the state's eminent domain power. As Defendants explain, Section 790.222 was enacted because the legislature found that "there is a need to comprehensively address the crisis of gun violence." (Doc. # 27 at 15). Therefore, the prohibition on bump-fire stocks is not a compensable taking under the Takings Clauses of the United States and Florida Constitutions. See Akins, 82 Fed. Cl. at 623 ("The record shows that ATF was acting under this [statutory] authority when it classified the Akins Accelerator [a device that increased the rate of fire of a semiautomatic weapon] as a machine gun, ordered Plaintiff to register or surrender the devices, and prohibited Plaintiff from selling them to anyone other than law enforcement agencies. As ATF was acting pursuant to the police power conferred on it by Congress,

10

Plaintiff's complaint fails to state a compensable takings claim under the Fifth Amendment.").

Roberts makes no argument in support of these claims besides flatly asserting that the Complaint "clearly is well-organized, well-stated and has a more than sufficient statement of the claims." (Doc. # 34 at 4). The Court disagrees, as explained above. Counts 1 through 4 are dismissed with prejudice.

### C.   Second Amendment Claims: Counts 5-6

The Complaint alleges Section 790.222 violates the Second Amendment of the United States Constitution both facially and as applied to Roberts. (Doc. # 1 at 12-13). Roberts alleges that "[f]irearms with modifications including, but not limited to, 2-stage triggers and short-reset triggers are 'in common use.'" (Id. at ¶¶ 61, 67). According to Roberts, Section 790.222 "prohibits law-abiding, responsible citizens from possessing any firearm with such modifications as well as prohibiting importation into the state, transfer, distribution, sale, keeping or offering for sale, possession, or giving to another person firearms with such modifications." (Id. at ¶ 62). Therefore, Roberts argues, "[t]his ban particularly infringes upon, and imposes an impermissible burden upon, U.S. Const. Amend. II rights of

11

the Plaintiff and law-abiding Floridians" and is unconstitutional. (Id. at ¶ 63). "Regardless of its facial validity, this ban particularly infringes upon, and imposes an impermissible burden upon, the Second Amendment rights of the plaintiff" and is — in Roberts' eyes — therefore unconstitutional as applied to him. (Id. at ¶ 69).

As a preliminary matter, Defendants assert that the Court need not conduct any Second Amendment analysis because "the statute does not restrict the activity that [Roberts] contends is protected by the Second Amendment." (Doc. # 27 at 17-18). They insist Roberts' "Second Amendment claim turns on other types of firearm modifications, not on the prohibition of actual bump-fire stocks" because Counts 5 and 6 mention only trigger modifications such as "2-stage triggers and short-reset triggers." (Id. at 18).

According to Defendants, "the rate of fire of an unmodified semiautomatic firearm not equipped with a bump-fire stock is one round per single operation of the mechanism (the trigger) that causes the firearm to discharge." (Id. at 18). But a single application of constant pressure on the front portion of a weapon modified with a true bump-fire stock results in more than one bullet being fired, though the trigger is technically depressed for each shot. (Id. at 3).

12

So, Defendants reason, because more than one bullet is fired per operation of an alternate firing mechanism (the application of pressure to the front of the weapon), a true bump-fire stock has increased the rate of fire for a modified semiautomatic weapon. (Id. at 18-19). Therefore, true bump-fire stocks are covered by Section 790.222. (Id.).

In contrast to true bump-fire stocks, Defendants insist that the trigger modifications mentioned by Roberts do not alter the rate of fire or mimic automatic weapon fire. (Id.). Defendants assert that those modifications do not allow the release of more than one bullet per initiation of the firing mechanism. (Id.). Even with those trigger modifications, "one must perform one operation per round fired . . . [by] pulling the trigger each time a round is fired." (Id. at 18). Therefore, Defendants argue those trigger modifications "do not 'alter' or 'increase the rate of fire' beyond which a semiautomatic firearm can operate," and thus, fall outside the scope of Section 790.222. (Id.).

But Defendants' argument that the trigger modifications are not covered by the statute relies on factual material outside the four corners of the Complaint. Defendants cite to multiple news sources in describing how bump-fire stocks and various trigger modifications function. (Id. at 3-5).

13

Defendants use this information to support their argument that the specified trigger modifications should not be considered as falling within Section 790.222's purview.

The Court declines to consider Defendants' outside information and explanations about the functioning of bump-fire stocks and trigger modifications at this juncture. The Court appreciates Defendants' efforts to explain a complicated subject. But the factual matters Defendants raise cannot be properly considered without converting the Motion to Dismiss into a motion for summary judgment, which the Court will not do.

And Defendants do not argue that a prohibition on the trigger modifications mentioned in the Complaint would fall outside the scope of the Second Amendment, even if they fell within the language of the statute. Nor do Defendants contend Roberts has otherwise failed to state a Second Amendment claim regarding these trigger modifications. Therefore, the Court need not delve into the two-part Second Amendment analysis. This claim survives because — given the information within the four corners of the Complaint — the statute plausibly covers the trigger modifications mentioned by Roberts. Defendants' arguments concerning the operation of bump-fire

stocks and various trigger modifications can be dealt with at the summary judgment stage.

###### D.   **Equal Protection Clause Claims: Counts 7-8**

In Counts 7-8, Roberts pleads facial and as-applied Equal Protection claims. (Doc. # 1 at 13-15). Roberts insists Section 790.222 "prohibits only certain law-abiding citizens from possessing, importing into the state, transferring, distributing, selling, keeping or offering for sale, or giving to another person" bump-fire stocks, as defined by the statute. (Id. at ¶¶ 73, 79). "Since different people are capable of pulling a trigger of a firearm at vastly different rates, the same conversion kit, tool, accessory or device possessed by one person would be perfectly legal, while another person in possession of the identical device would be committing a 3rd degree felony, punishable by 5 years imprisonment." (Id. at ¶ 74). Thus, Roberts reasons, the statute is facially unconstitutional. But, "[r]egardless of its facial validity, this ban violates the U.S. Const. Amend. XIV's Equal Protection rights of Plaintiff." (Id. at ¶ 81).

Defendants argue these claims should be dismissed. (Doc. # 27 at 15-17). They insist that Roberts "is mistaken about how the statute operates." (Id. at 16). "By the statute's own terms, whether a modification falls under the definition of

'bump-fire stock' does not turn on 'how fast one pulls the trigger of a semiautomatic firearm.'" (Id.). Rather, Defendants urge, whether a modification is a bump-fire stock is determined by "an objective test, which asks whether it is 'possible' for 'a person' to fire the firearm faster than it could be fired without the modification" and "the test is not whether the modification allows any particular possessor to fire the firearm more rapidly." (Id.).

The Court agrees that the statute creates an objective test. The difference in speed with which different individuals can fire a gun is not determinative of whether an item is a bump-fire stock under the statute. The statute's plain language does not discriminate between different groups of people, but rather applies equally to all bump-fire stock possessors. Therefore, these claims fail. Counts 7 and 8 are dismissed with prejudice.

### E.   Void for Vagueness Claims: Counts 9-10

Roberts argues Section 790.222 is void for vagueness, both facially and as applied to him, because it "lacks language to define what is specifically prohibited" and "does not state explicitly what it mandates, and what is enforceable." (Doc. # 1 at ¶¶ 85-86, 92-93). But Roberts only

points out one phrase he considers vague: "mimic automatic weapon fire." (<u>Id.</u> at ¶¶ 84, 91).

The Fifth Amendment provides, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The government violates due process when it deprives an individual of life, liberty, or property pursuant to an 'unconstitutionally vague' criminal statute." <u>Wiese</u>, 263 F. Supp. 3d at 997 (citing <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2557 (2015)). A statute is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008).

But a statute is not void for vagueness where "the meaning of the words used to describe the [impermissible] conduct can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning." <u>United States v. Eckhardt</u>, 466 F.3d 938, 944 (11th Cir. 2006)(citation omitted). And courts "apply the void-for-vagueness doctrine outside of the First Amendment context

only rarely." Am. Iron & Steel Inst. v. Occupational Safety & Health Admin., 182 F.3d 1261, 1277 (11th Cir. 1999).

Defendants argue the statute is not void for vagueness for multiple reasons. First, Defendants insist Roberts' "allegations are not specific enough to allow him to challenge the statute as void for vagueness" because Roberts "alleges that he 'owns Bump Fire Stocks.'" (Doc. # 27 at 21). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). So, "[i]f [Roberts'] own conduct is clearly proscribed by the terms of the [statute], this necessarily precludes a finding of facial vagueness." Catron v. City of St. Petersburg, 658 F.3d 1260, 1271 (11th Cir. 2011)(citation and internal quotation marks omitted). Therefore, Defendants argue that Roberts' vagueness claim fails to the extent it is based on Roberts' admitted ownership of actual bump-fire stocks.

Additionally, Roberts fails to describe what firearms and trigger modifications he owns in detail. According to Defendants, Roberts' allegations about these modifications "are insufficiently specific" because Roberts "alleges that he owns unspecified firearm modifications, the function of which he does not reveal, and conclusorily states that he is

unable to determine whether Section 790.222 bars his possession of those modifications." (Doc. # 27 at 21-22). The Court agrees with Defendants that the void for vagueness claims fail because Roberts admits that he owns traditional bump-fire stocks and fails to provide specifics about the trigger modifications which he alleges may also be considered bump-fire stocks under Section 790.222. More is needed to state a plausible claim that a statute is void for vagueness.

Furthermore, as Defendants emphasize, Roberts has only challenged the statute as vague based on the phrase "mimic automatic weapon fire." (Id. at 22). They insist that "people of ordinary intelligence 'have a common-sense understanding of what counts as' automatic weapon fire, and state and federal law 'gives th[is] concep[t] even further content and meaning.'" (Id. at 23)(citation omitted). Again, the Court agrees with Defendants. The phrase "mimic automatic weapon fire" is not unconstitutionally vague. Both state and federal law provide guidance on what constitutes an automatic weapon or "machinegun." See 26 U.S.C. § 5845(b)("The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."); Fla. Stat. § 790.001(9)("'Machine

gun' means any firearm, as defined herein, which shoots, or is designed to shoot, automatically more than one shot, without manually reloading, by a single function of the trigger."). And the verb "mimic" has a commonly understood meaning — "to imitate closely" or "simulate." See Mimic, Merriam-Webster's Collegiate Dictionary, available at https://www.merriam-webster.com/dictionary/mimic (last visited Aug. 14, 2018).

Given the common sense understanding of the words and the further meaning of terms provided by the law, a person of ordinary intelligence would be on notice of what Section 790.222 prohibits — devices and modifications that make a semiautomatic weapon closely resemble an automatic weapon in its rate of fire and functioning, without transforming it into a true automatic weapon. As Defendants explain, "a firearm mimics automatic weapon fire (but is not truly automatic because the trigger is actually depressed each time a round is fired)" if "a single operation [of an alternate firing mechanism, such as constant pressure on the front of a weapon] can result in the firing of more than one round (as a single trigger function does with an automatic weapon)." (Doc. # 27 at 24).

While the phrase "mimic automatic weapon fire" does not provide exact precision, such precision is not required for a statute to avoid being unconstitutionally vague. See This That & Other Gift & Tobacco, Inc. v. Cobb County, 285 F.3d 1319, 1325 (11th Cir. 2002)("We agree that the wording of the medical necessity exception is not precise in all respects. But the Constitution does not require precision; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding." (citation and internal quotation marks omitted)). Accordingly, Counts 9 and 10 are dismissed with prejudice.

**IV.   Conclusion**

Because Bondi is not the appropriate Defendant in this action, all claims are dismissed to the extent they are brought against her. Furthermore, Roberts' Takings, Equal Protection, and vagueness challenges to Section 790.222 fail, and thus those claims are dismissed in their entirety. But Roberts' Second Amendment claims survive to the extent they are brought against Swearingen.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

21

(1)  Defendants Pam Bondi and Rick Swearingen's Motion to Dismiss (Doc. # 27) is **GRANTED** in part and **DENIED** in part.

(2)  All claims are **DISMISSED** as to Bondi.

(3)  Counts 1-4 and 7-10 are **DISMISSED WITH PREJUDICE** in their totality.

(4)  The case will proceed as to the Second Amendment claims, Counts 5 and 6, to the extent they are brought against Swearingen.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of August, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE