# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

ADAM WAYNE TYLER ROBERTS,
Plaintiff,

v.

Case No: 8:18-cv-1062-T-33TGW

RICK SWEARINGEN,
Defendant

**MOTION FOR
TEMPORARY RESTRAINING ORDER**

_____

## PLAINTIFF'S PRO SE MOTION FOR TEMPORARY RESTRAINING ORDER WITH INCORPORATED MEMORANDUM OF LAW

1. Plaintiff, Adam Wayne Tyler Roberts seeks and hereby respectfully moves this Honorable Court for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 4.05(a) against above mentioned Defendant and his agents from enforcing Fla. Stat. 790.222.  Florida Stat. 790.222 takes effect on Monday, October 1st 2018.  Plaintiff has Contemporaneously filed a motion for Preliminary Injunction (Doc 42) on this matter. Plaintiff understands there not be enough time to have the injunction heard

before the law comes into effect, therefore Plaintiff has filed this motion.

## **BACKGROUND**

3. On March 9, 2018, Florida Governor Rick Scott signed into law Senate Bill 7026 which, among other provisions, amends Fla. Stat. 790.222 as follows:

Section 13. Effective October 1, 2018, section 790.222,

Bump-fire stocks prohibited.—A person may not import into this state or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump fire stock.  A person who violates this section commits a felony of the third degree, punishable as provided in s. 775.082,

As used in this section, the term "bump fire stock" means a conversion kit, a tool, an accessory, or a device used to alter the rate of fire of a firearm to mimic automatic weapon fire or which is used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device.

4. In a rush to pass legislation of any kind after the tragic Marjory Stoneman Douglas High School shooting in Parkland, legislation was rushed into the Florida Senate to pass any law quickly that might be signed in the few days before the end of the 2018 legislative session.  Even though Bump Fire Stocks of any kind were not used in the shooting and even though there is no crime to Plaintiff's knowledge of any kind committed with such devices in

Florida, Senate bill 7026, was signed into law, which became Fla.
Stat 790.222.

5. "The Plaintiff also owns "Bump Fire Stocks", and other
firearms that may be construed to be Bump Eire Stocks through trigger
modifications and fire control group upgrades. These would be
prohibited under FLA. STAT. S 790.222" (Compl. ¶ 32)  Even though
some of these devices are meant for slow fire accurate shots, and
some are not even rifle stocks, they fit the poorly worded definition
of "Bump Fire Stock" in the statute, and therefore would be
prohibited.  This became the basis of Plaintiff's Complaint.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

6. "any trigger modifications, trigger packs, trigger
assemblies, trigger jobs, multi-stage triggers and other
accouterments that tens of millions of firearms enthusiasts have
installed on their weapons could, in fact, result in someone pulling
the trigger at a faster rate than would be possible due to the faster
reset time.  This, in effect, could make many if not most or all of
the firearms in the state of Florida subject to this prohibition"
(Compl. ¶ 27)

7. The Second Amendment "guarantee[s] the individual right to possess and carry" firearms, and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." : *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

8. Florida's "Bump Fire Stock" ban challenges the basics of what was brought up in District of Columbia v. Heller.  In Heller, The District's ban on handguns was overturned, in part by "in common use" doctrine established in Miller.  "United States v. Miller, 307 U. S. 174, does not limit the right to keep and bear arms to militia purposes, but rather limits the type of weapon to which the right applies to those used by the militia, i.e., those in common use for lawful purposes." *District of Columbia v. Heller 554 U.S. 2 (2008*)

9. Here in Florida, Firearms with modifications that fit the definition of "Bump Fire Stock" include, but are not limited to, trigger packs, trigger assemblies, trigger jobs, multi-stage triggers, 2-stage triggers and short-reset triggers are "in common use" : United States v. Miller, 307 U. S. 174 (1939)

10. As similar to Heller, Florida's bumpstock prohibition applies to a whole class of firearms, either unintended by the legislature or otherwise, by definition clearly in the statute.  Here it must be noted that D.C.'s handgun prohibition itself was found unconstitutional, even though other firearms, such as rifles, were

available in the District.   Indeed, this was mentioned in the
dissenting opinion from Justice Stephen Breyer "The law concerns one
class of weapons, handguns, leaving residents free to possess
shotguns and rifles, along with ammunition." *District of Columbia v.
Heller 554 U.S. 148 (2008*)  This was not enough to uphold the ban on
entire classes of weapons. "The handgun ban and the trigger-lock
requirement (as applied to self-defense) violate the Second
Amendment. The District's total ban on handgun possession in the home
amounts to a prohibition on an entire class of "arms" that Americans
overwhelmingly choose for the lawful purpose of self-defense."
*District of Columbia v. Heller 554 U.S. 2 (2008*)

11. The case and consequences of Florida's total "Bump Fire Stock"
prohibition are an identical issue.

## **ARGUMENT**

12. This motion is based on the following grounds:

**(a)**.  If Fla. Stat. 790.222 came into effect while this case is
ongoing, the bump fire stock(s) and/or firearms would have to be
destroyed, otherwise plaintiff would violate Fla Stat 790.222 and
become a Felon.  The point of this legal action before the court is
to permit possession of such devices, therefore it would jeopardize
the chance for relief in this action.  Plaintiff will be left with an
irreparable injury, where no monetary compensation can cure or put

the conditions back to where they were previously.   In short, the plaintiff will suffer irreparable harm in absence of such relief.

**(b)**.  Plaintiff also believes the likelihood of 790.222 to be found unconstitutional is extremely likely.   The statute's wording clearly defines firearm accessories that would now be prohibited in the State of Florida.   Firearms with these modifications including, but are not limited to, trigger jobs, modifications, 2-stage triggers and short-reset triggers are "in common use" : United States v. Miller, 307 U. S. 174 (1939).   These accessories can reduce pre-travel, creep, and pull weight of the firearm's trigger.   While intended for more accurate and faster slow-fire follow-up shots they can be used to fire the weapon faster than otherwise be possible unassisted by such modifications, therefore fitting the definition of a 'Bump Fire Stock', even if they are not stocks at all.   This faster follow-up is not the Plaintiff's interpretation, but a fact that is common knowledge in the firearms industry.[1]   Millions of Americans and Floridians use such devices, and they are commonly stocked in gun shops in the State of Florida.

**(c)**.   Fla Stat 790.222 puts an impermissible burden upon, and is a violation of the Second Amendment of the United States

---

1   https://www.shootingillustrated.com/articles/2016/11/29/single-stage-vs-double-stage-triggers/
even though intended for slow fire accuracy, all modifying devices such as these allow faster reset, technically allowing faster firing of the weapon, even if poorly and inaccurate.

Constitution, therefore granting this motion for Temporary Restraining Order would be in the public interest.

**(d)**.   This "Bump Fire Stock" ban impacts and creates an impermissible burden upon a Constitutional right.   This, in effect, would create a "Chilling Effect" where a once-exercised right is now prosecuted.   Therefore, there is is no other alternative remedy other than enjoining the state from enforcing Fla Stat. 790.222.

**(e)**. This prohibition, effective October 1, 2018, demonstrates the threat on this case is **immediate**.   This time is also currently within the time allotted for discovery in this case.   This is the immediacy requiring the Temporary Restraining Order.

**(f)**. Plaintiff and all Floridians would have to destroy their "Bump Fire Stocks" or face prosecution.   This can include the entire firearm that would have to be destroyed.   The balance of harms clearly tilts in the Plaintiff's favor.

**(g)**. Granting a Temporary Restraining Order maintains the status-quo.   There will be no change and no adverse effects to public interest.   To the best of Plaintiff's knowledge there have been no deaths or crimes of any kind committed in the state of Florida with such devices.   To the contrary, due to the poorly worded law, having Fla Stat. 790.222 go into effect would be adverse to public interest, due to its broad applications and unintended consequences to

Plaintiff and many firearm owners which constitute violations of the Second Amendment of the United States Constitution.

## **CONCLUSION**

**13. WHEREFORE,** for the reasons stated above, Plaintiff prays for and respectfully requests this court grant:

**(a)** a Temporary restraining order temporarily restraining Defendant Rick Swearingen and his employees and agents from enforcing or applying Fla. Stat. 790.222 until a hearing on Plaintiff's motion for preliminary injunction can be heard.

**(b)** any further relief the court seems just and proper.

Dated September 25, 2018

Respectfully Submitted

Adam Wayne Tyler Roberts

_____/s/ Adam Roberts__   _____

Plaintiff, pro se

<u>CERTIFICATE OF SERVICE</u>

I Adam Wayne Tyler Roberts ,HEREBY CERTIFY that a true and correct copy of the foregoing was served to defendants' counsel through CM/ECF's Notice of Electronic Filing System.


<u>__/s/ Adam Roberts____</u>

<u>Adam Wayne Tyler Roberts</u>