**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ADAM WAYNE TYLER ROBERTS,

      *Plaintiff*,

      v.                         Case No. 8:18-CV-1062-T-33TGW

RICK SWEARINGEN;

      *Defendant*.

_____/

**DEFENDANT'S CONSOLIDATED OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

This Court recently granted in part and denied in part Defendant's motion to dismiss this lawsuit, in which Plaintiff Adam Wayne Tyler Roberts challenges Florida's recently passed legislation prohibiting the possession, sale, or purchase of bump-fire stocks. That prohibition becomes effective on October 1, 2018. Although Plaintiff filed this suit on May 1, 2018, and although the Court's Case Management Order ("CMO") issued June 13, 2018, Plaintiff only now—less than one week before October 1, 2018—requests that the Court preliminarily enjoin Defendant from enforcing Florida's prohibition on bump-fire stocks. Mot., ECF No. 42 (M.D. Fla. Sept. 25, 2018). Because he waited so long to move for a preliminary injunction, Plaintiff also filed a motion for a temporary restraining order. Mot., ECF No. 43 (M.D. Fla. Sept. 25, 2018). Plaintiff's motions should be denied for two reasons. First, Plaintiff cannot satisfy any of the factors that the Court considers in determining whether to grant a preliminary injunction or a temporary restraining order. Second, any "emergency" or "immediacy" results solely from Plaintiff's needless and unexplained delay in seeking injunctive relief.

## BACKGROUND

In March 2018, the Florida Legislature passed the Marjory Stoneman Douglas High School Public Safety Act, which in part created Section 790.222, Florida Statutes, making it a third-degree felony to "import into [Florida] or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump-fire stock." The statute defines the term "bump-fire stock" as "a device [1] used to alter the rate of fire of a firearm to mimic automatic weapon fire or [2] which is used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted" by such a device. § 790.222, Fla. Stat. (numbering added). This provision takes effect October 1, 2018.

Plaintiff alleged that he is a Florida resident who owns bump-fire stocks and "other firearms that," in his view, "may be construed to be Bump Fire Stocks through trigger modifications and fire control group upgrades." Compl., ECF No. 1, ¶ 32 (M.D. Fla. May 1, 2018). Plaintiff sued both Pam Bondi in her official capacity as Florida's Attorney General and Rick Swearingen in his official capacity as Commissioner of the Florida Department of Law Enforcement, claiming that Section 790.222 violates both the U.S. Constitution and Florida's Constitution: He argued that it operates as an unconstitutional taking of his property without compensation (Counts 1-4); violates the Second Amendment (Counts 5-6); violates the Equal Protection Clause (Counts 7-8); and is unconstitutionally vague (Counts 9-10).

Defendants moved to dismiss. ECF No. 27 (M.D. Fla. July 2, 2018). On August 21, 2018, this Court granted in part and denied in part Defendants' motion. Order, ECF No. 37 (M.D. Fla. Aug. 21, 2018). *First*, the Court concluded that Attorney General Bondi "is not a proper defendant in this action," and therefore dismissed "[a]ll Counts . . . to the extent they are brought against Bondi," leaving only Commissioner Swearingen as a defendant. *Id.* at 7. *Second*, the

2

Court held that "Section 790.222 is an exercise of the legislative police power, not the state's eminent domain power," and therefore "dismissed with prejudice" Plaintiff's Takings claims (Counts 1-4). *Id.* at 10. *Third*, the Court held that because "[t]he statute's plain language does not discriminate between different groups of people, but rather applies equally to all bump-fire stocks," Plaintiff's Equal Protection claims failed; the Court thus "dismissed with prejudice" those claims (Counts 7-8). *Id.* at 16. *Fourth*, the Court held that Plaintiff's void-for-vagueness challenges failed because the statute was not unconstitutionally vague, and thus "dismissed with prejudice" those claims as well (Counts 9-10). *Id.* at 21.

That left Counts 5 and 6, Plaintiff's as-applied and facial challenges under the Second Amendment. Plaintiff alleges that § 790.222 violates the Second Amendment because, in his view, it prohibits the possession of "[f]irearms with modifications including . . . 2-stage triggers and short-reset triggers," which he alleges are in "common use." Compl., ECF No. 1, ¶¶ 61, 62, 67, 68 (M.D. Fla. May 1, 2018); *see id.* ¶¶ 27-31 (contending that the statute prohibits "trigger modifications, trigger packs, trigger assemblies, trigger jobs, [and] multi-stage triggers"). As a result, he maintains, the statute "imposes an impermissible burden [on his] Second Amendment rights." *Id.* ¶¶ 63, 69. Defendants argued that because the statute does not prohibit the trigger modifications specified in Plaintiff's complaint, it does not violate the Second Amendment. But, exercising its discretion, the Court declined to convert Defendants' motion to dismiss into a motion for summary judgment to consider "Defendant's outside information and explanations about the functioning of bump-fire stocks and trigger modifications," and thus denied Defendants' motion to dismiss Plaintiff's Second Amendment claims. Order, ECF No. 37, at 14.

Those claims against Defendant Swearingen are all that remain in this case. Plaintiff alleges only that the statute's alternative definition of bump-fire stocks—devices "used to

increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted" by such a device—violates the Second Amendment because it purportedly covers, and therefore prohibits, types of firearm modifications other than actual bump-fire stocks. Compl., ECF No. 1, ¶¶ 27-31, 61, 62, 67, 68 (M.D. Fla. May 1, 2018).

After the Court denied Defendants' motion to dismiss Plaintiff's Second Amendment claims, Defendant filed an answer. ECF No. 41 (M.D. Fla. Sept. 7, 2018). The parties are currently in the middle of discovery. Plaintiff responded to Defendant's interrogatories on September 17, 2018; Plaintiff, counsel for Defendant, and Defendant's potential expert witness met on September 20, 2018, to examine the firearm modifications at issue; and Defendant's expert report is due September 28, 2018. *See* ECF No. 15 (M.D. Fla. June 13, 2018); ECF No. 39 (M.D. Fla. Aug. 28, 2018). The following deadlines were also set in the Court's June 13, 2018 CMO: the discovery deadline is October 17, 2018; motions for summary judgment are due November 16, 2018; and trial is set for April 1, 2019. *See* ECF No. 15 (M.D. Fla. June 13, 2018).

Invoking the statute's impending effective date of October 1, 2018, Plaintiff now—more than four months after he filed his complaint, more than three months after the Court issued the CMO, and less than one week before the statute's effective date—seeks a preliminary injunction prohibiting Defendant from enforcing § 790.222.

## LEGAL STANDARD

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

4

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) (internal quotation marks omitted). A preliminary injunction is an "extraordinary and drastic remedy" and should not be granted unless "the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Id.* (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).

## ARGUMENT

At the outset, Plaintiff's motion for a temporary restraining order should be summarily denied. Plaintiff has failed to meet the requirement of Local Rule 4.05 and Federal Rule of Civil Procedure 65(c) that he "set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c)." Local Rule 4.05(b)(3). Nor has he established that any "injury is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible." Local Rule 4.05(b)(2). Instead, his motion for a temporary restraining order asserts only identical arguments to those presented in his motion for a preliminary injunction, which, as explained below, do not establish any injury that is either imminent or irreparable. *Compare* Mot., ECF No. 42, at 2-8 (M.D. Fla. Sept. 25, 2018), *with* Mot., ECF No. 43, at 2-8 (M.D. Fla. Sept. 25, 2018). And for the reasons explained below, Plaintiff cannot meet any of the four requirements to issue either a temporary restraining order or a preliminary injunction. Any "emergency" or "immediacy" results *solely* from Plaintiff's own delay in seeking injunctive relief.

## I.   EACH OF THE RELEVANT FACTORS WEIGHS AGAINST ISSUING A PRELIMINARY INJUNCTION.

Plaintiff has the burden of establishing his entitlement to the "extraordinary and drastic remedy" of injunctive relief, and he cannot satisfy any of the four required factors. *FF*

*Cosmetics*, 866 F.3d at 1298. He is not likely—let alone substantially likely—to succeed on the merits of his Second Amendment claims because the statute does not prohibit the trigger modifications that he believes it does. He would not suffer any irreparable harm absent an injunction because he may continue to lawfully possess the trigger modification at issue even after October 1, 2018. He has identified no injury outweighing the harm to Defendant in having the statute, enacted to further public safety, suspended pending the Court's determination on the merits. And enjoining the State from enforcing the statute would be adverse to the public's interest to be safe from the dangers posed by bump-fire stocks.

### A. Plaintiff is not substantially likely to succeed.

Importantly, Plaintiff does not allege either that banning bump-fire stocks violates the Second Amendment or that the first clause of the statute, prohibiting devices "used to alter the rate of fire of a firearm to mimic automatic weapon fire," violates the Second Amendment. Thus, to the extent that Plaintiff now argues that banning actual bump-fire stocks violates the Second Amendment or that the first clause of the statute violates the Second Amendment, those arguments are irrelevant.[1] Plaintiff's Second Amendment claim, as pleaded in his Complaint, turns on *other* types of firearm modifications, *not* on the prohibition of actual bump-fire stocks. *See* Compl. ¶¶ 61, 67; *see also* Mot., ECF No. 42, at 3 (M.D. Fla. Sept. 25, 2018). Only whether the second clause of the statute violates the Second Amendment is at issue here—and it does not.

Plaintiff contends that § 790.222 violates the Second Amendment because, in his view, it prohibits the possession of "[f]irearms with modifications including . . . 2-stage triggers and

---

[1] In an interrogatory response, Plaintiff correctly asserted that § 790.222 bans his "Slide Fire stock," which "allows comfortable bump-firing of semiautomatic weapons." Exhibit A, at 3. But he does not allege that prohibiting actual bump-fire stocks, such as his "Slide Fire stock," unlawfully burdens his Second Amendment rights.

short-reset triggers," which he alleges are in "common use." Compl., ECF No. 1, ¶¶ 61, 62, 67, 68 (M.D. Fla. May 1, 2018); *see id.* ¶¶ 27-31 (contending that the statute prohibits "trigger modifications, trigger packs, trigger assemblies, trigger jobs, [and] multi-stage triggers"); *see also* Mot., ECF No. 42, at 3 (M.D. Fla. Sept. 25, 2018). As a result, he maintains, the statute "imposes an impermissible burden [on his] Second Amendment rights." Compl. ¶¶ 63, 69; Mot. at 3.

In response to Defendant's interrogatories, Plaintiff narrowed his claim. When asked to disclose "<u>each item</u>, including conversion kit, tool, accessory, or device, that [he] possess[es] or ha[s] custody of, that [he] believe[s] to be prohibited as 'bump-fire stock' pursuant to Section 790.222, Florida Statutes," Plaintiff disclosed only three items: A "Slide Fire stock" that "allows comfortable bump-firing of semiautomatic firearms it can be attached to"—i.e, an actual bump-fire stock; a "Personally Modified AR-15 Fire Control Group & Receiver"; and a "Modifying Screwdriver." Exhibit A, at 4.[2] Thus, based on the evidence produced at this stage of the proceedings, Plaintiff possesses only one type of trigger modification that he contends the statute prohibits: The personally modified fire control group and receiver, along with the screwdriver that he uses in conjunction with that modification (the "modified hex bolt"). Whether the statute would prohibit other types of trigger modifications described in Plaintiff's complaint is not at issue (Plaintiff does not have standing to challenge the purported prohibition of an item he does not possess).[3] In sum, whether Plaintiff can demonstrate a substantial likelihood of success

---

[2] Exhibit A is Plaintiff's response to Defendant's first set of interrogatories.

[3] Similarly, Plaintiff's argument that he is "extremely likely" to succeed because "the statute's wording" purportedly "defines firearm accessories that would now be prohibited" is irrelevant. Mot., ECF No. 42, at 6 (M.D. Fla. Sept. 25, 2018). Plaintiff has identified only one such trigger modification that he possesses—the modified hex bolt.

depends on whether he can establish that the statute prohibits him from possessing the modified hex bolt.

Like the other Courts of Appeals, the Eleventh Circuit "employ[s] a two-step inquiry when faced with Second Amendment challenges." *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017). First, the Court must "ask if the restricted activity is protected by the Second Amendment in the first place." *Id.* (quoting *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012) (alteration in original). "If the challenged regulation does not burden conduct within the scope of the Second Amendment as historically understood, then the law comports with the Second Amendment." *Id.* "But if it does, then [the Court] must apply an appropriate form of means-end scrutiny." *Id.*

This Court need not engage in any part of this inquiry here because the statute does not prohibit the trigger modification that Plaintiff possesses, the modified hex bolt.[4] In other words, the statute does not restrict the activity that Plaintiff contends is protected by the Second Amendment; therefore, the Court has no occasion to consider whether the Second Amendment would prevent the State from restricting that activity.

The trigger modification that Plaintiff possesses, the modified hex bolt, leaves unchanged the basic functionality and rate of fire (one round per operation of the firing mechanism) of a semiautomatic firearm. Exhibit B, at 5.[5] The operation of the mechanism that causes an

---

[4] It is no answer to suggest that he asserts a facial challenge as well. To mount such a challenge successfully, Plaintiff "must establish that no set of circumstances exists under which" the statute "would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). But he does not even contend that, if (properly) interpreted to ban only actual bump-fire stocks, the statute would violate the Second Amendment. Nor could he successfully establish as much, as explained below.

[5] Exhibit B is the current draft version of Defendant's expert report. Under the CMO, and pursuant to the Court's order extending the deadline for Defendant's expert disclosure, Defendant's expert disclosure is due September 28, 2018. *See* ECF No. 15 (M.D. Fla. June 13,

unmodified semiautomatic firearm to discharge—a single pull of the trigger—results in a single round being fired. *Id.* In other words, the rate of fire of an unmodified semiautomatic firearm not equipped with an actual bump-fire stock is one round per single operation of the mechanism (the trigger) that causes the firearm to discharge. *Id.* Plaintiff's trigger modification, the modified hex bolt, may increase or decrease the amount of pressure or distance that is required to depress the trigger and fire the weapon, but the modification does not change the firearm's basic functionality or rate of fire—one must perform one operation per round fired, in this case pulling the trigger each time a round is fired. *Id.* Plaintiff's trigger modification therefore does not "alter" or "increase the rate of fire" beyond which a semiautomatic firearm can operate. *Id.* As modified by Plaintiff's trigger modification, a semiautomatic firearm will still fire only one round per function of the trigger. And as will be explained in Defendant's forthcoming expert report, Defendant's expert will testify that in his opinion, the modified hex bolt is not an item that would fit the definition of bump-fire stock in the statute. *Id.*

By contrast, a bump-fire stock adds *additional* functionality to the semiautomatic firearm. In addition to firing a round by pulling the trigger, a bump-fire stock allows a person to fire a round by performing a different operation: the application of constant forward pressure to the front portion of the firearm. *Id.* at 4. And that functionality allows a person to fire at "a faster rate than is possible for a person to fire such semiautomatic firearm" without the device; i.e., more than one round per single operation of the mechanism that causes the firearm to discharge. *Id.* By

---

2018); ECF No. 39 (M.D. Fla. Aug. 28, 2018). Defendant thus reserves the right to modify, in consultation with Defendant's expert, the expert report before September 28, 2018. Because of the expedited treatment of Plaintiff's motions, because Defendant's expert was preparing to finalize his report by September 28, 2018, and because of Defendant's expert's work schedule, counsel has been unable to obtain a signed copy from Defendant's expert. As soon as counsel does so—likely on September 26, 2018—counsel will file a substituted version of Exhibit B.

the single operation of applying constant forward pressure to the front portion of a bump-fire stock equipped firearm, the user can fire multiple rounds, therefore increasing the rate of fire beyond what is possible without the bump-fire stock (one round per operation of the mechanism that causes the firearm to discharge). *Id.* In other words, unlike the modified hex bolt, a bump-fire stock allows the user to discharge more than one round with a single operation of the mechanism that causes the firearm to discharge. That is what the statute prohibits; Plaintiff's modified hex bolt trigger modification is not prohibited.

In sum, because the statute does not prohibit what Plaintiff alleges that it prohibits, he has no likelihood of success on his Second Amendment claims. In fact, Plaintiff implicitly acknowledges that the statute covers only bump-fire stocks: He contends that to the best of his knowledge, "there have been no deaths or crimes of any kind committed in the state of Florida with such devices." Mot., ECF No. 42, at 7 (M.D. Fla. Sept. 25, 2018). Yet if the statute actually prohibited a wide range of trigger modifications and firearms as Plaintiff contends, that would plainly be inaccurate, meaning that by referring to "such devices," Plaintiff is referring only to actual bump-fire stocks.

Even if Plaintiff's Complaint could fairly be construed to raise Second Amendment challenges to the statute's *actual* operation—its prohibition of bump-fire stocks—those challenges would fail. "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," "the sorts of weapons protected [are] those 'in common use'" for "lawful purposes like self-defense," and this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *District of Columbia v. Heller*, 554 U.S. 570, 624, 627 (2008) (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939), and 4 Blackstone 148-49 (1769), respectively). As examples

of arms that do not qualify for Second Amendment protection under this standard, the Supreme Court has identified "short-barreled shotguns," "machineguns," and "M-16 rifles and the like." *Id.* at 624, 625, 627; *see also Hollis v. Lynch*, 827 F.3d 436, 448–51 (5th Cir. 2016) (holding that under *Heller*'s "dangerousness" and "unusualness" tests, machineguns fall outside the scope of the Second Amendment); *United States v. One (1) Palmetto State Aromory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial Number LW001804*, 822 F.3d 136, 144 (3d Cir. 2016) (holding that "the possession of a machine gun is not protected under the Second Amendment," and noting that "the courts are in agreement" on that proposition).

As defined by the statute, a bump-fire stock "alter[s]" a firearm's rate of fire to "mimic" that of a machinegun, or "increase[s] the rate of fire" beyond that of an unmodified firearm. If the government may, consistent with the Second Amendment, restrict "machineguns" and "the like" because of their dangerousness or unusualness, it may restrict firearm modifications that mimic the rate of fire of machineguns. Because that is what the statute does, the statute does not burden any conduct that the Second Amendment protects.

**B.**      **Plaintiff will not suffer any irreparable harm absent an injunction.**

"A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks omitted). "[E]ven if [Plaintiff] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* And the asserted irreparable harm "must be neither remote nor speculative, but actual and imminent." *Id.* Here, Plaintiff has not identified *any* injury, let alone irreparable injury that is actual and imminent.

But Plaintiff's motion suffers from an even more basic flaw: Plaintiff's unexplained failure to timely seek a preliminary injunction itself warrants denying his motion. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal— militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). That is because "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* Thus, "unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion," and "[c]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-cv-23905, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (holding that three-month delay was "by itself sufficient grounds to deny [plaintiff's] request for an injunction") (internal quotation marks omitted). In *Wreal*, the Eleventh Circuit upheld the denial of a preliminary injunction where the district court concluded that an "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Id.*; *see also Rodriguez v. Bryson*, No. 5:17-cv-10, 2018 WL 2750232, at *4

(M.D. Ga. June 7, 2018) (five-month delay "militate[d] against a finding of irreparable harm" (internal quotation marks omitted).

Here, the legislation at issue was enacted six months ago, putting Plaintiff on notice of its October 1, 2018 effective date. *See Thompson v. Alabama*, No. 2:16-cv-783, 2017 WL 3223915, at *11 (M.D. Ala. July 28, 2017) (no showing of irreparable harm where plaintiffs knew the date of the election at issue since the governor signed a proclamation two-and-a-half months before moving for preliminary injunction). Plaintiff filed his suit more than four months ago, at which point he could have moved for a preliminary injunction. This Court issued the currently operative scheduling order more than three months ago, putting Plaintiff on notice that discovery would end *after* October 1, 2018; that motions for summary judgment would be due *after* October 1, 2018; and that any trial would occur *after* October 1, 2018. ECF No. 15 (June 13, 2018); *see Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). The Court's denial in part of Defendants' motion to dismiss, if anything, underscored that this case would not be resolved before October 1, 2018—and in any event, the motion to dismiss could only have resolved the case in *Defendants'* favor. All in all, Plaintiff has known for many months that (1) October 1, 2018 is when the statute takes effect, and (2) absent a summary judgment motion from Plaintiff, this Court would not rule that § 790.222 is unconstitutional before October 1, 2018. No summary judgment motion has been filed, so Plaintiff has long been aware that the statutory effective date would pass uneventfully.

Yet now, less than one week before the effective date, Plaintiff seeks a preliminary injunction. Aside from conclusively demonstrating a lack of irreparable injury, the timing of his motion does not account for either the Federal Rules of Civil Procedure or this Court's Local

Rules. Under Local Rule 4.06(a), "[a] preliminary injunction may not be issued absent notice (Rule 65(a)(1), Fed.R.Civ.P.), which must be given *at least fourteen (14) days in advance of the hearing* (Rule 6(c), Fed.R.Civ.P.)." (emphasis added). Under Local Rule 3.01(b), Defendant is entitled to "fourteen (14) days" to respond to Plaintiff's motion. And under Local Rule 4.06(b)(3), Defendant must file its responsive brief "at least seven (7) days before the hearing." In other words, if Plaintiff sought the issuance of a preliminary injunction before October 1, 2018, he must have filed his motion at least fourteen days before that date. Indeed, he acknowledges that "this may not be enough time to have the injunction heard," which is why he also moved for a temporary restraining order. Mot., ECF No. 42, at 1 (M.D. Fla. Sept. 25, 2018). Plaintiff identifies no reason why this Court should give expedited treatment to his motion, let alone "good cause" under Fed. R. Civ. P. 6(c)(1)(C). In short, although Plaintiff contends that the impending October 1, 2018 deadline presents an "immediate" threat, any "immediacy" is entirely of his own making. Mot., ECF No. 42, at 7 (M.D. Fla. Sept. 25, 2018).

Setting aside Plaintiff's failure to timely move, because § 790.222 does not cover Plaintiff's trigger modification, he can identify no injury (let alone an irreparable injury) that would result from allowing the statute to take effect. Whether the statute takes effect or not, Plaintiff can continue to lawfully possess the trigger modification identified in his interrogatory responses (the modified hex bolt), as explained above.

And even if—contrary to the statute's text and the legislature's intent to ban only bump-fire stocks— Plaintiff were to be threatened in the future with criminal prosecution based on his trigger modification, a fact not present here, the potential for such a threat is far too remote or speculative to constitute irreparable injury. Plaintiff has not alleged or produced any evidence establishing that he faces the threat of prosecution for the modified hex bolt. As a result, any

14

argument that he might face prosecution in the future is neither "actual" nor "imminent," and thus cannot constitute irreparable injury. *Siegel*, 234 F.3d at 1176.

What is more, *Younger* abstention would limit this Court's discretion to enjoin any such hypothetical prosecution. "[A]bsent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *Younger v. Harris*, 401 U.S. 37, 46 (1971). Although a "few narrow exceptions" exist, the only exception even conceivably relevant here would be "the exception for irreparable injury." *Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1263 (11th Cir. 2004). But for that exception to apply, Plaintiff would have to establish that § 790.222 is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id.* (quoting *Younger*, 401 U.S. at 53-54). As explained above, the statute does not violate the Second Amendment because it does not prohibit Plaintiff's trigger modification. And Plaintiff himself does not contend that "every clause, sentence and paragraph" violates the Second Amendment; for example, he does not challenge the first clause of the definition of bump-fire stocks or argue that prohibiting actual bump-fire stocks is unconstitutional. In other words, this narrow exception plainly would not apply, meaning that this Court would abuse its discretion if it were to enjoin the State from prosecuting Plaintiff—and, to be clear, the State would not prosecute Plaintiff under § 790.222 for the trigger modification he describes in his interrogatory responses (the modified hex bolt), as opposed to his actual bump-fire stock.

Further, that Plaintiff must dispose of his actual bump-fire stock (the Slide Fire stock) before October 1, 2018, cannot constitute irreparable harm, for several reasons. *First*, as explained above, he does not challenge the first definition of bump-fire stock in § 790.222 under the Second Amendment. Thus, whether or not he succeeds on his Second Amendment challenge

to the second definition of bump-fire stock, the first definition would remain in effect, and ban the Slide Fire stock, unless this Court were to conclude that the statute is not severable—a showing that Plaintiff has made no attempt to satisfy. *Second*, even if Plaintiff were required to dispose of his bump-fire stock before October 1st and the Court were to subsequently conclude that § 790.222 is both unconstitutional and not severable, any harm would be easily reparable: Plaintiff could simply obtain money damages and buy a new bump-fire stock. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Plaintiff's assertion that he "will be left with an irreparable injury, where no monetary compensation can cure or put the conditions back to where they were previously," is thus demonstrably incorrect. Mot., ECF No. 42, at 5 (M.D. Fla. Sept. 25, 2018). He does not, for example, contend that the bump-fire stock that he possesses is in some way unique or that purchasing another if he were to succeed would not redress his injury.

### C.       The harm to Defendant caused by an injunction would outweigh any harm to Plaintiff.

Because Plaintiff cannot demonstrate *any* harm that he would suffer absent a preliminary injunction, he cannot establish that such harm would outweigh harm to Defendant. And a preliminary injunction would harm Defendant by preventing him from enforcing the ban on bump-fire stocks, which is a duly enacted criminal statute that Defendant is bound to enforce. As Commissioner of Florida's Department of Law Enforcement, Swearingen's mission is "[t]o promote public safety and strengthen domestic security," a mission that would be hampered if he

were prevented from enforcing a criminal statute intended to promote public safety.[6] Plaintiff does not address the harm to Defendant.

### D. An injunction would be adverse to the public interest.

Plaintiff argues only that an injunction would be in the public's interest because the statute places an "impermissible burden upon" and "violat[es]" the Second Amendment but, as explained above, it does no such thing. Mot., ECF No. 42, at 7-8 (M.D. Fla. Sept. 25, 2018).

Instead, an injunction would be adverse to the public interest. "Section 790.222 was enacted because the legislature found that 'there is a need to comprehensively address the crisis of gun violence.'" Order, ECF No. 37, at 10 (M.D. Fla. Aug. 21, 2018). Florida's Legislature made a policy judgment that, to address this crisis, banning bump-fire stocks was prudent. A preliminary injunction preventing Defendant from enforcing the ban on bump-fire stocks would substitute this Court's judgment for the Legislature's considered policy judgment and thwart the public's interest in ensuring that these dangerous devices are not available in the State—and the public's interest in public safety is self-evident. That "[t]o the best of Plaintiff's knowledge there have been no deaths or crimes of any kind committed in the state of Florida with such devices"—bump-fire stocks—is irrelevant. Mot., ECF No. 42, at 7 (M.D. Fla. Sept. 25, 2018). To begin with, Plaintiff's own personal knowledge is insufficient to demonstrate that bump-fire stocks have never been used to commit crimes in Florida. And even if he were correct, the public's interest in public safety does not come into existence only after people are injured or killed.

---

[6] *See* http://www.fdle.state.fl.us/About-Us/About-Us.aspx.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motions for a preliminary

injunction and for a temporary restraining order.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

*/s/ Christopher J. Baum*
Christopher J. Baum (FBN 1007882)
DEPUTY SOLICITOR GENERAL

Edward M. Wenger (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
Jordan E. Pratt (FBN 100958)
DEPUTY SOLICITOR GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3683
(850) 410-2672 (fax)
edward.wenger@myfloridalegal.com

Diana R. Esposito (FBN 16523)
Office of the Attorney General
Suite 1100
501 E Kennedy Blvd
Tampa, FL 33602
(813) 233-2600
diana.esposito@myfloridalegal.com

Albert J. Bowden (FBN 802190)
Special Counsel
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3300
al.bowden@myfloridalegal.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this September 25, 2018, a copy of the foregoing was served on Plaintiff through CM/ECF's Notice of Electronic Filing System. Plaintiff, who is proceeding pro se, has been authorized to use the Court's CM/ECF system. *See* ECF No. 6.

/s/ *Christopher J. Baum*
Christopher J. Baum