**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ADAM WAYNE TYLER ROBERTS,

   *Plaintiff*,

   v.                                    Case No. 8:18-CV-1062-T-33TGW

RICK SWEARINGEN;

   *Defendant*.

_____/

## DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

Defendant Rick Swearingen, in his official capacity as Commissioner of the Florida Department of Law Enforcement, hereby moves to exclude any testimony offered as expert testimony under Federal Rule of Evidence 702 by Plaintiff Adam Wayne Tyler Roberts.

## BACKGROUND

On June 13, 2018, this Court entered its Case Management And Scheduling Order. ECF No. 15 (M.D. Fla. June 13, 2018). The Court specifically noted that Plaintiff, who is proceeding pro se, must comply with the order. *Id.* at \*3. In that order, the Court established August 17, 2018, as Plaintiff's deadline to disclose any expert report. *Id.* at \*1. Plaintiff did not move to extend that deadline. And Plaintiff did not disclose any expert report or witness to Defendant.

Plaintiff's deposition testimony suggests that he may attempt to introduce his own testimony as expert testimony. If he does attempt to do so, Defendant hereby moves to exclude that testimony because Plaintiff failed to disclose it in discovery and because it does not meet Rule 702's requirements.

## ARGUMENT

**I.     PLAINTIFF FAILED TO DISCLOSE HIS PURPORTED EXPERT TESTIMONY DURING DISCOVERY.**

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." At a minimum, Plaintiff must state "the subject matter on which [he] is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i), (ii). Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Plaintiff has not done so, and he makes no showing that his failure was substantially justified. Moreover, failing to disclose himself as a purported expert witness until summary judgment or until the eve of trial would be highly prejudicial. Although Defendant deposed Plaintiff, it was in his capacity as a lay witness, not as an expert witness. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 684 (M.D. Fla. 2010) (excluding expert testimony where witness was disclosed as fact witness, not expert witness, after close of discovery). Thus, Defendant "would be prejudiced if [Plaintiff] were allowed to give expert opinions because [Defedant] does not know the complete substance of or basis for the expert opinions and will not have all the information necessary under Rule 26." *Id.* Any expert testimony that Plaintiff proffers should therefore be excluded on this basis alone.

II. **PLAINTIFF IS NOT QUALIFIED AS AN EXPERT AND ANY OPINIONS HE WOULD OFFER ARE INADMISSIBLE UNDER DAUBERT.**

Even if the Court were to conclude that Plaintiff's failure to disclose expert testimony were substantially justified or harmless under Rule 37, Plaintiff does not qualify as an expert on firearms. Under Federal Rule of Evidence 702, expert testimony is admissible only the expert is "qualified as an expert by knowledge, skill, experience, training, or education" and "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." "Moreover, the proponent of expert testimony bears the burden of demonstrating the expert's qualifications and competence to give his proposed testimony." *United States v. Williams*, 865 F.3d 1328, 1338 (11th Cir. 2017) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)). And even if the expert is qualified and his testimony passes muster under Rule 702, it can nonetheless be excluded under Rule 403. *Id.*

  A. **Plaintiff is not qualified as a firearms expert.**

"'[E]xperts may be qualified in various ways,' including by scientific training, education, and experience." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004)); *see* Fed. R. Evid. 702 (explaining that a witness can be "qualified as an expert by knowledge, skill, experience, training, or education"). Although Plaintiff is a "[s]elf-proclaimed" expert on firearms, he is not qualified as a firearms expert under Rule 702. Ex. 1, at 43:17.

*Plaintiff has not been educated as a firearms expert*. Plaintiff "[w]ent to college for a while" at Manatee Community College, attending "off and on from '99 to '06," and eventually

3

earning his "associate's in arts"; he "also went to USF for a while" in "'06," earning "[u]nder 12 credits there." Ex. 1, at 8:20-9:9. He did not testify that any of his coursework at those colleges related to firearms. Nor did he provide any evidence that he received any other education related to firearms.

*Plaintiff has not been trained as a firearms expert.* As Plaintiff admits, he has not taken any "professional training or education classes" relating to firearms, because in his view "there is no authority in that." Ex. 1, at 10:6-12. Indeed, he admitted that he has not taken any professional training or education classes whatsoever. Ex. 1, at 10:13-19. He does not "hold any certifications from the NRA as a firearms instructor" or "any certifications or licenses from any entity that enabled [him] to provide firearms training or instruction to others." Ex. 1, at 28:1-29:8. In fact, he was "unaware there are really authoritative – I'm unaware of any authoritative licenses," including the State of Florida's Class K Firearms Instructor license. Ex. 1, at 28:15-17, 28:25-29:8; *see also* Ex. 1, at 43:7-9 ("There's no authority. You can't be a firearms instructor given by a certificate by some real authority."). Nor has he ever "individually trained individuals in the use of firearms in order to qualify them to receive a certification or permit for a firearm." Ex. 1, at 30:4-7.

Instead, he stated that he "trained in firearms at Self-Defense Firearms & Hobbies," and "train[ed] for my concealed carry class." Ex. 1, at 9:25-10:3. The training that he received from the owner of Self-Defense Firearms & Hobbies, as described by Plaintiff, was that the owner "built a house," apparently for the purposes of marketing it as a training facility to local police forces: "It was a run house where we'd run through and sweep, you know, and make sure we could not point our weapon at other people, you know, make sure – it was a – it was part of what

we were going to build for training for the police and SWAT for Palmetto Police and Palmetto SWAT." Ex. 1, at 26:24-27:25.

To receive his concealed firearms permit, first issued in 2009, Plaintiff took a "four-hour course" where "[t]hey teach you the basics, they teach you about the law, they teach you not to shoot yourself, and then you go out and shoot the gun." Ex. 1, at 36:21-25. That course, done in conjunction with a gun show, involved an instructor "load[ing] the weapon, put[ting] it on the counter," at which point Plaintiff picked it up, shot it once, and placed it back on the counter. Ex. 1, at 37:7-38. The rest of the course involved "going over rules or regulations, perhaps watching a video, that sort of thing." Ex. 1, at 37:25-38:3.

*Plaintiff's employment does not qualify him as a firearms expert*. In 2006, he worked for "a few months" for a research survey company at which he "call[ed] people up and . . . beg[ged] them to take surveys." Ex. 1, at 11:19-12:5. After that, "for a while [he] didn't do anything," and then "decided to shoot weddings." Ex. 1, at 12:8-11. He then began, "[o]ff and on," to photograph "business parties" and "business-related videos," for which "a great analogy would be [H]ow [I]t's [M]ade." Ex. 1, at 12:19-13:6. In 2010, Plaintiff "decided to change and try to enter the film industry," so in 2011 he "started working for Filming Florida Productions," a company that closed in 2014. Ex. 1, at 16:5-20. In that job, he filmed a movie called "Text Message"; he shot a public service announcement; and he photographed business parties. Ex. 1, at 17:1-11. And from 2011 to 2014 he worked part-time for a company called "ATX Aerials," a website that does "aerial footage;" he still works for them "on occasion." Ex. 1, at 17:24-18:9, 18:22-23. In the last four years, aside from occasional work for ATX Aerials, he has "done computer work on the side for people," meaning "computer repair," for "maybe one or two" hours per month. Ex. 1, at 19:7-17. He has also "store[d] data on my computers for film

5

companies who want off-site back-up data, and they pay me money to store their data," for "[m]aybe five hours a month." Ex. 1, at 20:2-4, 20:17-22. He also worked one day for "Orensis Films." Ex. 1, at 21:5-9.

Plaintiff's only firearms-related employment experience is that, from 2010 to 2014, he worked part-time, "[m]aybe ten" hours a week, at "Self-Defense Firearms & Hobbies," a business that closed in 2014. Ex. 1, at 13:16-19, 14:5, 15:16-19. His duties there were to "s[ell] firearms online," to do "gunsmithing for [the owner] under [the owner's] license," to "inspect firearms" for safety purposes, to "buil[d] some parts on parts kits . . . and set those into the cases," he "put guns into the safe," and he "helped him paint." Ex. 1, at 14:9-20. He "never assembled the whole firearm because [the owner] didn't have a manufacturing license," and because he did not obtain the required federal license either. Ex. 1, at 14:14-15; Ex. 1, at 34:6-22. According to Plaintiff, he has manufactured for his own personal use "dozens" of firearms, but he does not possess a federal manufacturing license. Ex. 1, at 40:9, 34:6-22; ECF No. 53, at *2 (M.D. Fla. Nov. 11, 2018).

Plaintiff has never "discharge[d] [his] weapon as part of [his] employment." Ex. 1, at 25:19-26:1; *see also* Tr. 26:21-23 ("Q: Okay. Have you ever used and discharged semiautomatic rifles as part of your occupation? A: No."). For about 15 hours, Plaintiff assisted, apparently on a volunteer basis, a police officer teaching a concealed carry course, during which he helped to "keep the weapon pointed away at all times, . . . [to] [m]ake sure it's pointed in a safe distance, keep your finger off the trigger, that sort of thing." Ex. 1, at 26:3-20.

\*   \*   \*

In sum, Plaintiff's proffered qualifications as a firearms expert amount to his experience using firearms recreationally; attending a cursory concealed-carry course; conducting "run-

throughs" of a "run house" built by a hobby-shop owner; repairing firearms on a part-time basis at that hobby shop for a few years; and serving as a safety assistant to a police officer for a few hours of concealed-carry courses. Not only does Plaintiff lack any firearms instruction certifications, but he was also unaware that they existed. He has never received any formal firearms training other than the four-hour concealed-carry course, during which he fired one round. And he has never discharged firearms or received firearms training as part of his employment. As a result, he does not qualify as a firearms expert under Rule 702.

### B.   Plaintiff has made no showing that his undisclosed opinions satisfy *Daubert*.

Because Plaintiff has not disclosed any purported expert testimony that he may attempt to introduce at summary judgment or at trial, he has made no showing that such testimony would satisfy Rule 702. In other words, Plaintiff has not established that his testimony would "help the trier of fact to understand the evidence or to determine a fact in issue," that it "is based on sufficient facts or data," that it "is the product of reliable principles and methods," or that he "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This, in turn, establishes that Defendant would be prejudiced if Plaintiff attempted to introduce expert testimony after the close of discovery (which has already occurred) because Defendant would need an opportunity to assess each of these factors, including by deposing Plaintiff and consulting with Defendant's own expert, and present argument to the Court, which would inevitably cause delay.

## **CONCLUSION**

Defendant hereby respectfully requests that if Plaintiff attempts to introduce expert testimony, the Court refuse to admit that testimony into evidence.

Respectfully submitted.

PAMELA JO BONDI
ATTORNEY GENERAL

*/s/ Christopher J. Baum*
Christopher J. Baum (FBN 1007882)
DEPUTY SOLICITOR GENERAL

Edward M. Wenger (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
Jordan E. Pratt (FBN 100958)
DEPUTY SOLICITOR GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3683
(850) 410-2672 (fax)
edward.wenger@myfloridalegal.com

Diana R. Esposito (FBN 16523)
Office of the Attorney General
Suite 1100
501 E Kennedy Blvd
Tampa, FL 33602
(813) 233-2600
diana.esposito@myfloridalegal.com

Albert J. Bowden (FBN 802190)
Special Counsel
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3300
al.bowden@myfloridalegal.com
*Counsel for Defendant*

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that counsel for Defendant has conferred with Plaintiff, who is proceeding pro se, regarding this motion. Plaintiff has advised counsel for Defendant that he opposes the motion.

/s/ *Christopher J. Baum*
Christopher J. Baum

## CERTIFICATE OF SERVICE

  I certify that on this November 16, 2018, a copy of the foregoing was served on Plaintiff through CM/ECF's Notice of Electronic Filing System. Plaintiff, who is proceeding pro se, has been authorized to use the Court's CM/ECF system. *See* ECF No. 6.

/s/ *Christopher J. Baum*
Christopher J. Baum
