# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ADAM WAYNE TYLER ROBERTS,

      *Plaintiff*,

      v.                          Case No. 8:18-CV-1062-T-33TGW

RICK SWEARINGEN;

      *Defendant*.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

By now, it is clear that Plaintiff's lawsuit raises a very narrow, specific challenge to § 790.222, Fla. Stat., Florida's ban on bump-fire stocks. As Plaintiff confirmed at the hearing on his motion for a preliminary injunction, he does not challenge § 790.222's ban on actual bump-fire stocks. Instead, he argues only that the statute's second definition of bump-fire stocks prohibits him from possessing a certain homemade trigger modification. And as Magistrate Judge Wilson explained, "[it] might have been at the time [Plaintiff] filed [his] complaint, [he] didn't know where [the Defendant was] going" in terms of what the statutory definition covers, "[b]ut [the Defendant has] clarified it now." Ex. 1, at 7:23-25. Put simply, the Defendant has put to rest whatever uncertainty Plaintiff might have had about the statute's application by unequivocally clarifying that the statute does not prohibit him from possessing that particular modification. As a result, the predicate for Plaintiff's Second Amendment claims has vanished: § 790.222 cannot violate the Second Amendment by prohibiting Plaintiff from possessing the items at issue because it does not prohibit Plaintiff from possessing those items. And even if it did, Plaintiff has produced no evidence whatsoever to support his Second Amendment claims.

To sustain those claims, for example, Plaintiff would have to establish that his homemade trigger modification is in common use, that it burdens the core of the Second Amendment right, and that § 790.222 does not survive the appropriate means-end scrutiny. No evidence in the record exists to establish any of these facts, and thus by definition no genuine dispute of material fact exists. Summary judgment is therefore appropriate.

What is more, an even more basic flaw with Plaintiff's suit requires dismissal: This Court lacks subject-matter jurisdiction because Plaintiff has no standing to challenge § 790.222's application to his homemade trigger modification. Plaintiff's asserted injury-in-fact is the threat of prosecution for possessing that modification. But he no longer possesses that item; he has produced no evidence showing that he intends to seek its return, but that § 790.222 prevents him from doing so; and he has never been arrested, prosecuted, or even threatened with arrest or prosecution for owning the homemade trigger modification at issue. Thus, he has no cognizable Article III injury, which the Supreme Court has made crystal clear must be "actual and imminent." Plaintiff's purported injury is neither. He raises only abstract concerns about the precision of § 790.222's drafting. As a result, this Court should dismiss for lack of subject-matter jurisdiction.

## PROCEDURAL BACKGROUND

In March 2018, the Florida Legislature passed the Marjory Stoneman Douglas High School Public Safety Act, which in part created § 790.222, Florida Statutes, making it a third-degree felony to "import into [Florida] or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump-fire stock." The statute defines the term "bump-fire stock" as "a device [1] used to alter the rate of fire of a firearm to mimic automatic weapon fire or [2] which is used to increase the rate of fire to a faster rate than is possible for

a person to fire such semiautomatic firearm unassisted" by such a device. § 790.222, Fla. Stat. (numbering added). This provision took effect October 1, 2018.

Plaintiff alleged that he is a Florida resident who owns bump-fire stocks and "other firearms that," in his view, "may be construed to be Bump Fire Stocks through trigger modifications and fire control group upgrades." Compl., ECF No. 1, ¶ 32 (M.D. Fla. May 1, 2018). Plaintiff sued both Pam Bondi in her official capacity as Florida's Attorney General and Rick Swearingen in his official capacity as Commissioner of the Florida Department of Law Enforcement, claiming that § 790.222 violates both the U.S. Constitution and Florida's Constitution: He argued that it operates as an unconstitutional taking of his property without compensation (Counts 1-4); violates the Second Amendment (Counts 5-6); violates the Equal Protection Clause (Counts 7-8); and is unconstitutionally vague (Counts 9-10).

Defendants moved to dismiss. ECF No. 27 (M.D. Fla. July 2, 2018). On August 21, 2018, this Court granted in part and denied in part Defendants' motion. Order, ECF No. 37 (M.D. Fla. Aug. 21, 2018). *First*, the Court concluded that Attorney General Bondi "is not a proper defendant in this action," and therefore dismissed "[a]ll Counts . . . to the extent they are brought against Bondi," leaving only Commissioner Swearingen as a defendant. *Id.* at 7. *Second*, the Court held that "Section 790.222 is an exercise of the legislative police power, not the state's eminent domain power," and therefore "dismissed with prejudice" Plaintiff's Takings claims (Counts 1-4). *Id.* at 10. *Third*, the Court held that because "[t]he statute's plain language does not discriminate between different groups of people, but rather applies equally to all bump-fire stocks," Plaintiff's Equal Protection claims failed; the Court thus "dismissed with prejudice" those claims (Counts 7-8). *Id.* at 16. *Fourth*, the Court held that Plaintiff's void-for-vagueness

3

challenges failed because the statute was not unconstitutionally vague, and thus "dismissed with prejudice" those claims as well (Counts 9-10). *Id.* at 21.

That left Counts 5 and 6, Plaintiff's as-applied and facial challenges under the Second Amendment. Plaintiff alleges that the second definition of bump-fire stocks in § 790.222—devices "used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted" by such a device—violates the Second Amendment because, in his view, it prohibits the possession of "[f]irearms with modifications including . . . 2-stage triggers and short-reset triggers," which he alleges are in "common use." Compl., ECF No. 1, ¶¶ 61, 62, 67, 68 (M.D. Fla. May 1, 2018); *see id.* ¶¶ 27-31 (contending that the statute prohibits "trigger modifications, trigger packs, trigger assemblies, trigger jobs, [and] multi-stage triggers"). As a result, he maintains, the statute "imposes an impermissible burden [on his] Second Amendment rights." *Id.* ¶¶ 63, 69.

Defendants argued that because the statute does not prohibit the trigger modifications specified in Plaintiff's complaint, it does not violate the Second Amendment. But, exercising its discretion, the Court declined to convert Defendants' motion to dismiss into a motion for summary judgment to consider "Defendant's outside information and explanations about the functioning of bump-fire stocks and trigger modifications," and thus denied Defendants' motion to dismiss Plaintiff's Second Amendment claims. Order, ECF No. 37, at 14 (M.D. Fla. Aug. 21, 2018). Those claims against Defendant Swearingen are all that remain in this case.

After Defendant filed an answer and just before the statute's effective date, Plaintiff moved for a temporary restraining order and for a preliminary injunction prohibiting Defendant from enforcing § 790.222. This Court denied the motion for a temporary restraining order (Order, ECF No. 48 (M.D. Fla. Sept. 26, 2018)), and referred the preliminary injunction motion

to Magistrate Judge Wilson, who held a hearing on October 29, 2018. Discovery concluded on October 17, 2018.

## STATEMENT OF MATERIAL FACTS

1.      Before October 1, 2018, Plaintiff Adam Wayne Tyler Roberts possessed three items that he believes are prohibited as a "bump-fire stock" pursuant to § 790.222, Fla. Stat.:

      a.      A "SlideFire Systems SSAR-15 SBS Slide Fire stock" (Ex. 2, at 2, 3; Ex. 5, at 0:57 to 1:34, 3:11 to 3:15, & 4:24 to 8:12);

      b.      A "Personally Modified AR-15 Fire Control Group & Receiver (Ex. 2, at 2, 4; Ex. 5, at 13:29 to 14:00) (referred to here as the "modified hex bolt"); and

      c.      A "Modifying Screwdriver" (Ex. 2, at 2, 5; Ex. 5, at 12:11 to 12:38).[1]

2.      Since § 790.222 took effect on October 1, 2018, Plaintiff has not possessed in the State of Florida any of the three items that he believes to be prohibited as a "bump-fire stock" pursuant to § 790.222, because he mailed each of them to an acquaintance in Texas. Ex. 3, at 59:19-63:4.

3.      Plaintiff testified that he does not intend to seek the return of either the modified hex bolt or the modifying screwdriver from that acquaintance, regardless of § 790.222's constitutionality. Ex. 3, at 62:7-11, 62:21-25.

4.      Plaintiff has produced no evidence showing that he has ever been threatened with arrest or prosecution, or that he has actually been arrested or prosecuted, for violating § 790.222.

---

[1] Defendant objects to Plaintiff's self-serving statements made during the video as hearsay and on the basis of relevancy.

5.      Plaintiff has produced no evidence showing that he has ever been threatened with arrest or prosecution, or that he has actually been arrested or prosecuted, for violating § 790.222 by possessing either the modified hex bolt or the modifying screwdriver.

6.      Plaintiff does not contend that banning actual bump-fire stocks violates the Second Amendment or that the first clause of the statute, prohibiting devices "used to alter the rate of fire of a firearm to mimic automatic weapon fire," violates the Second Amendment. *See* Compl., ECF No. 1, ¶¶ 27, 61-62, 67 (M.D. Fla. May 1, 2018); Mot. for TRO, ECF No. 43, at 3-4 (M.D. Fla. Sept. 25, 2018); Order, ECF No. 48, at 4, 7 (M.D. Fla. Sept. 26, 2018); Ex. 1, at 11:17-18, 5:15-6:25, 11:8-9, 18:8-23.

7.      Plaintiff does not contend that § 790.222 is unconstitutional in all of its applications.

8.      Plaintiff does not contend that § 790.222's second definition, if unconstitutional, is not severable from the rest of the statute.

9.      Instead, Plaintiff contends only that the second clause of the statute, prohibiting devices "used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device," prohibits his possession of the modified hex bolt and the modifying screwdriver. *See* Compl., ECF No. 1, ¶¶ 27, 61-62, 67 (M.D. Fla. May 1, 2018); Mot. for TRO, ECF No. 43, at 3-4 (M.D. Fla. Sept. 25, 2018); Order, ECF No. 48, at 4, 7 (M.D. Fla. Sept. 26, 2018); Ex. 1, at 11:17-18, 5:15-6:25, 11:8-9, 18:8-23.

10.     The rate of fire of an unmodified semiautomatic firearm is one round per single operation of the mechanism—in the case of an unmodified firearm, the trigger—that causes the firearm to discharge. Ex. 4, at 3; Ex. 5, at 3:51 to 4:14.

6

11.     True bump-fire stocks, such as Plaintiff's SlideFire Systems bump-fire stock, allow a person to fire more than one round per single operation of the mechanism that causes the firearm to discharge—in that case, the single operation of applying constant forward pressure to the front portion of a bump-fire stock equipped firearm—thereby increasing the rate of fire of the firearm. Ex. 4, at 4; Ex. 5, at 8:32 to 9:19.

12.     Neither the modified hex bolt nor the modifying screwdriver changes the basic functionality of a semiautomatic firearm. Ex. 4, at 5. Those items may increase or decrease the amount of pressure or distance that is required to depress the trigger and fire the weapon, but they do not change the firearm's basic functionality or rate of fire: a person must still perform one operation per every round fired, by physically pulling the trigger each time a round is fired. Ex. 4, at 5-6; Ex. 5, at 11:08 to 11:49, & 16:26 to 17:23.

13.     Plaintiff has produced no evidence establishing that his homemade firearm modification consisting of a personally modified hex bolt and modifying screwdriver is "in common use" for purposes of the Second Amendment.

14.     Plaintiff has produced no evidence establishing that § 790.222 burdens "the core lawful purpose of self-defense" in the home protected by the Second Amendment.

15.     Plaintiff has produced no evidence establishing that § 790.222 does not survive the appropriate means-end scrutiny applied to laws burdening the Second Amendment right.

## MEMORANDUM OF LAW

### LEGAL STANDARD

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250-51 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it could affect the outcome of the suit. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO ASSERT HIS SECOND AMENDMENT CLAIMS.

As this Court has already noted, "the only potential harm that Roberts faces if the statute is not enjoined is that he could potentially be arrested for possession of such trigger modifications unless he forfeits them." Order, ECF No. 48, at 7 (M.D. Fla. Sept. 26, 2018). Likewise, the only potential harm that Plaintiff faces if the statute is not struck down as unconstitutional is a potential arrest based on possession of that homemade trigger modification. Because Plaintiff has not established *any* likelihood that the State would arrest or prosecute him for possessing the homemade trigger modification at issue, and because Plaintiff no longer possesses or seeks to possess that homemade trigger modification, Plaintiff has no cognizable Article III injury.

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). The "'[f]irst and foremost' of standing's three elements" is injury in fact. *Id.*

To establish this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citation omitted).

"Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (citation omitted). So the imminence requirement "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Id.* That is the case here.

"[T]he risk that Roberts will be arrested for violation of Section 790.222 for possession of those trigger modifications is remote and highly speculative." Order, ECF No. 48, at 7 (M.D. Fla. Sept. 26, 2018). Plaintiff has not alleged or produced any evidence establishing that he faces the threat of arrest or prosecution for possessing the modified hex bolt. As explained below, he does not face any such threat because the statute does not prohibit possessing those items. At the preliminary injunction hearing, Magistrate Judge Wilson explained this at length to Plaintiff. Ex. 1, at 7:10-13 ("And so there's no basis for prosecuting you on the other two items, for two reasons. One is you don't have them now. And the crime is possessing a bump stock. And they say they were not bump stocks."); *see id.* at 9:8-16. And as counsel for Defendant explained at the hearing, any prosecution for possession of those items would face several insurmountable hurdles, including the Defendant's position in this litigation and Defendant's expert report. Thus, standing alone, the complete absence of evidence that Plaintiff faces any risk of prosecution for possessing those items establishes that Plaintiff lacks Article III standing. His concern that "the

9

next Attorney General" may change the State's interpretation of the statute ignores the potential effects of judicial estoppel and, in any event, is purely hypothetical, akin to the "'some day' intentions" that the Supreme Court held in *Lujan* to be insufficient to "support a finding of the 'actual or imminent' injury that [its] cases require." 504 U.S. at 564; Ex. 1, at 9:18-19.

What is more, Plaintiff no longer possesses the sole homemade trigger modification at issue—the modified hex bolt and the screwdriver. The modified hex bolt "is gone. It is mailed to Texas." Ex. 3, at 61:23. Not only did he mail it to his acquaintance in Texas, thereby transferring possession, he transferred *ownership* of it to that individual: he "told him to keep it because they are simple to make." Ex. 3,at 62:10-11. As for the screwdriver, "[i]t is mailed out of the state . . . to the same fellow in Texas." Ex. 3, at 62:14-20. And as with the modified hex bolt, he did not intend that the individual return it to him: he "[n]ever had an agreement" that if he wanted the screwdriver back the individual would return it to him; instead, Plaintiff explained, "if I wanted it back, I suppose I could ask for it." Ex. 3, at 62:21-25.

In short, therefore, Plaintiff has no Article III injury. The only potential harm he faces is potential arrest based on possession of the modified hex bolt or the screwdriver. He has not produced any evidence at all that he faces arrest or prosecution for possessing those items. And he no longer possesses those items and, critically, he does not maintain that he intends to reclaim them from his Texan acquaintance in the future. As a result, Plaintiff lacks Article III standing to challenge § 790.222 as violating the Second Amendment for purportedly outlawing possession of those items, and this Court should therefore dismiss this case for lack of subject-matter jurisdiction. Put simply, because zero risk exists that he faces arrest or prosecution for items that he does not possess or seek to possess, and because zero risk exists that he would face imminent

arrest or prosecution even if he did possess them, Plaintiff has only the same abstract interest in a ruling on § 790.222's constitutionality as any other citizen.

## II.   PLAINTIFF'S SECOND AMENDMENT CLAIMS FAIL AS A MATTER OF LAW.

### A.   Section 790.222 does not prohibit Plaintiff from possessing the devices at issue.

Importantly, Plaintiff does not allege either that banning actual bump-fire stocks violates the Second Amendment or that the first clause of the statute, which prohibits devices "used to alter the rate of fire of a firearm to mimic automatic weapon fire," violates the Second Amendment. *See* Compl., ECF No. 1, ¶¶ 27, 61-62, 67 (M.D. Fla. May 1, 2018); Mot. for TRO, ECF No. 43, at 3-4 (M.D. Fla. Sept. 25, 2018); Order, ECF No. 48, at 4, 7 (M.D. Fla. Sept. 26, 2018). Plaintiff confirmed as much at the preliminary injunction hearing. Ex. 1, at 11:17 (Magistrate Judge Wilson explaining that "you confirmed what they've been saying, is you haven't challenged the prohibition on bump stocks. You're concerned that the definition might cover something else that you make or something that somebody else makes that could increase the rate of fire."); *see also id.* at 5:15-6:25, 11:8-9, 18:8-23. Thus, to the extent that Plaintiff now argues that banning actual bump-fire stocks violates the Second Amendment or that the first clause of the statute violates the Second Amendment, those arguments are irrelevant.

Plaintiff's Second Amendment claim—as pleaded in his Complaint, construed by this Court, and confirmed by Plaintiff himself—turns on *other* types of firearm modifications, *not* on the prohibition of actual bump-fire stocks. At issue here is only whether the second clause of the statute violates the Second Amendment by prohibiting *other* types of firearms modifications. And it does not, as this Court suggested in its order denying Plaintiff's motion for a temporary restraining order. Order, ECF No. 48, at 4 (M.D. Fla. Sept. 26, 2018) ("the

Court agrees with Swearingen that Roberts has not shown for the purposes of obtaining a temporary restraining order that the trigger modifications he mentions fall under the language of Section 790.222").

Like the other Courts of Appeals, the Eleventh Circuit "employ[s] a two-step inquiry when faced with Second Amendment challenges." *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017). First, the Court must "ask if the restricted activity is protected by the Second Amendment in the first place." *Id.* (quoting *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012) (alteration in original). "If the challenged regulation does not burden conduct within the scope of the Second Amendment as historically understood, then the law comports with the Second Amendment." *Id.* "But if it does, then [the Court] must apply an appropriate form of means-end scrutiny." *Id.*

This Court need not engage in any part of this inquiry here because the statute does not prohibit the homemade trigger modification that Plaintiff used to possess, the modified hex bolt.[2] *See* Ex. 1, at 11:25-12:1 (Magistrate Judge Wilson explaining that Plaintiff's homemade trigger modification is "not something that's covered by the bump stock statute"). In other words, the statute does not restrict the activity that Plaintiff contends is protected by the Second Amendment; therefore, the Court has no occasion to consider whether the Second Amendment would prevent the State from restricting that activity.

The challenged statutory definition reads as follows: "the term 'bump-fire stock' means a conversion kit, a tool, an accessory, or a device . . . which is used to increase the rate of fire to a

---

[2] It is no answer to suggest that Plaintiff asserts a facial challenge as well. To mount such a challenge successfully, Plaintiff "must establish that no set of circumstances exists under which" the statute "would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). But he does not even contend that, if (properly) interpreted to ban only actual bump-fire stocks, the statute would violate the Second Amendment.

faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device." § 790.222. The rate of fire of an unmodified semiautomatic firearm not equipped with a bump-fire stock is one round per single operation of the mechanism (the trigger) that causes the firearm to discharge. Ex. 4, at 3; Ex. 5, at 3:51 to 4:14.

The statute prohibits modifications that would allow multiple rounds to be fired with a single operation of the mechanism that causes the firearm to discharge—for example, actual bump-fire stocks, which allow multiple rounds to be fired with the single application of constant pressure on the front portion of the modified weapon. Ex. 4, at 4 (Plaintiff's actual bump-fire stock "provides an additional mechanism to cause the discharge of the firearm: forward pressure on the front portion of the firearm."); Ex. 5, at 8:32 to 9:19; Ex. 3, at 63:13-20, 64:22-65:1, 65:8-19, 89:14-90:25. That functionality allows a person to fire at "a faster rate than is possible for a person to fire such semiautomatic firearm" without the device; i.e., more than one round per single operation of the mechanism that causes the firearm to discharge. Ex. 4, at 4. By the single operation of applying constant forward pressure to the front portion of a bump-fire stock equipped firearm, the user can fire multiple rounds, therefore increasing the rate of fire beyond what is possible without the bump-fire stock (one round per operation of the mechanism that causes the firearm to discharge), without flexing a finger to pull the trigger. *Id.*; *see* Ex. 3, at 64:7-69:22. That is what § 790.222 prohibits.

By contrast, the homemade trigger modification that Plaintiff used to possess, the modified hex bolt, leaves unchanged the basic functionality and rate of fire (one round per operation of the firing mechanism) of a semiautomatic firearm. Ex. 4, at 5; *see* Ex. 3, at 79:2-13, 92:20-94:25; Ex. 5, at 11:08 to 11:49, & 16:26 to 17:23. With that modification, the operation of the mechanism that causes an unmodified semiautomatic firearm to discharge—a single pull of

the trigger—results in a single round being fired. Ex. 4, at 5. Plaintiff's homemade trigger modification, the modified hex bolt, may increase or decrease the amount of pressure or distance that is required to depress the trigger and fire the weapon, but the modification does not change the firearm's basic functionality or rate of fire: a person must still perform one operation per round fired, in this case physically pulling the trigger each time a round is fired. *Id.*; *see* Ex. 3, at 80:4-14. Plaintiff's homemade trigger modification therefore does not "alter" or "increase the rate of fire" beyond which a semiautomatic firearm can operate. Ex. 4, at 5. As altered by Plaintiff's homemade trigger modification, a semiautomatic firearm will still fire only one round per function of the trigger. *See id.* at 5-6 (With the modified hex bolt, "the rifle functioned as a traditional semi-automatic firearm . . . only a single round was discharged for each operation of the mechanism (the trigger) that caused the firearm to discharge."). In Defendant's expert's opinion, the modified hex bolt is therefore not an item that would fit the definition of bump-fire stock in the statute.

In sum, because § 790.222 does not prohibit Plaintiff from possessing the homemade trigger modification at issue, this Court has no occasion to consider whether the statute burdens Plaintiff's Second Amendment rights. Because Plaintiff has not established any genuine issue of fact on this issue, Defendant is entitled to summary judgment.

### B.    Section 790.222 does not violate the Second Amendment.

Even if the Court were to conclude that § 790.222 does prohibit Plaintiff from possessing the homemade trigger modification at issue, Plaintiff has not created any genuine dispute of material fact about whether his homemade trigger modification is in "common use," as this Court suggested in denying Plaintiff's motion for a temporary restraining order. Order, ECF No. 48, at 4-5 (M.D. Fla. Sept. 26, 2018) ("Roberts presents no support" for the proposition "that the

various trigger modifications are 'in common use,' . . . besides the allegation in his Complaint that such trigger modifications are 'in common use.'").

"[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes"; rather, "the sorts of weapons protected [are] those 'in common use'" for "lawful purposes like self-defense," and this "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *District of Columbia v. Heller*, 554 U.S. 570, 624, 627 (2008) (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939), & 4 Blackstone 148-49 (1769), respectively). As examples of arms that do not qualify for Second Amendment protection under this standard, the Supreme Court has identified "short-barreled shotguns," "machineguns," and "M-16 rifles and the like." *Id.* at 624, 625, 627; *see also Hollis v. Lynch*, 827 F.3d 436, 448–51 (5th Cir. 2016) (holding that under *Heller*'s "dangerousness" and "unusualness" tests, machineguns fall outside the scope of the Second Amendment); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 144 (3d Cir. 2016) (holding that "the possession of a machine gun is not protected under the Second Amendment," and noting that "the courts are in agreement" on that proposition). This is an "important limitation." *United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (quoting *Heller*, 554 U.S. at 627).

Since the Court denied Plaintiff's motion for a temporary restraining order, Plaintiff has not come forward with any evidence supporting his bald assertion that his homemade trigger modification is "in common use" for purposes of the Second Amendment analysis. *See* Ex. 2, at 4 (explaining that the modified hex bolt is manufactured by Plaintiff). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff has not even produced a scintilla of evidence on this issue; he has produced none at all. Instead, he merely verified his original complaint and filed an affidavit regarding the functionality of the devices and explaining his theory of the case. ECF Nos. 52, 53 (M.D. Fla. Oct. 11, 2018). Thus, Plaintiff has failed to establish any genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law: No reasonable jury could conclude, based on the evidence in the record, that Plaintiff's homemade trigger modification are in "common use," because there is no evidence in the record on that issue.

For example, in *United States v. Miller*, the Supreme Court explained that "[i]n the absence of any evidence tending to show that possession or use of [the firearm device at issue] at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." 307 U.S. 174, 178 (1939); *see*, *e.g.*, *Daughtry v. Jenny G. LLC*, 703 F. App'x 883, 887 (11th Cir. 2017) (granting summary judgment where there was no evidence to establish material fact). So too here: a similar absence of any evidence exists. By contrast, in *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1275 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), the district court found that high-capacity magazines were in common use based on Plaintiffs' evidence including statistics and reports regarding nationwide ownership and production of such devices. Plaintiff has not even attempted to make such a showing here.

Moreover, Plaintiff would be unable to establish that § 790.222 burdens "the core lawful purpose of self-defense" in the home protected by the Second Amendment. *Heller*, 554 U.S. at 630. Nor has he produced any evidence showing that § 790.222 would not survive the

appropriate means-end scrutiny. *See GeorgiaCarry.Org*, 687 F.3d at 1260. For all these reasons, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court either dismiss this case for lack of subject-matter jurisdiction or, in the alternative, grant summary judgment for Defendant as to all of Plaintiff's remaining claims.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

*/s/ Christopher J. Baum*
Christopher J. Baum (FBN 1007882)
DEPUTY SOLICITOR GENERAL

Edward M. Wenger (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
Jordan E. Pratt (FBN 100958)
DEPUTY SOLICITOR GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3683
(850) 410-2672 (fax)
edward.wenger@myfloridalegal.com

Diana R. Esposito (FBN 16523)
Office of the Attorney General
Suite 1100
501 E Kennedy Blvd
Tampa, FL 33602
(813) 233-2600
diana.esposito@myfloridalegal.com

Albert J. Bowden (FBN 802190)
Special Counsel
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3300
al.bowden@myfloridalegal.com

17

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this November 16, 2018, a copy of the foregoing was served on Plaintiff through CM/ECF's Notice of Electronic Filing System. Plaintiff, who is proceeding pro se, has been authorized to use the Court's CM/ECF system. *See* ECF No. 6.

/s/ *Christopher J. Baum*
Christopher J. Baum