# Exhibit 4: Defendant's Expert Report

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ADAM WAYNE TYLER ROBERTS,**
    **Plaintiff,**

v.                                              Case No. 8:18-CV-1062-T-33TGW

**RICK SWEARINGEN,**

    **Defendants.**
_____/

**REPORT OF DEFENDANT'S EXPERT**

**A. INTRODUCTION**

    Section 790.222, Florida Statutes, with an effective date of October 1, 2018, provides the following:

> A person may not import into this state or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump-fire stock. A person who violates this section commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. As used in this section, the term "bump-fire stock" means a conversion kit, a tool, an accessory, or a device used to alter the rate of fire of a firearm to mimic automatic weapon fire or which is used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device.

    It is my understanding that the Plaintiff, Adam Roberts, has filed a Complaint in which he claims to have some items that would fit the statutory definition of "bump-fire stock," and that these items are either installed on, or in, firearms that he owns. I have been retained by the Defendant in this case to provide information and opinions regarding the items and firearms that Plaintiff owns because he believes them to be prohibited by Section 790.222.

    Anything expressed herein is within a reasonable degree of probability.

1

B. **QUALIFICATIONS**

I am a firearms instructor and trainer, and I reside in Palmetto, Florida. With regard to my background, I was in the U.S. Army from 1989-1991 where I was trained in, and used, several different firearms, including the M-16 rifle—the select-fire version of the semi-automatic AR-15 rifle and its variants. From 1993 to 1999, I was a corrections officer and police reserve officer, where I also trained in and used a variety of hand-held weapons. From 1993 to 1999, I was a co-owner and senior instructor at an indoor gun range in Port Richey, Florida. Beginning in 2000 and continuing to the present, I have trained almost 9,000 individuals to qualify them to obtain a concealed weapon license in Florida. Most recently, I have also been Vice President of a company located in Bradenton, Florida, that provided security training. In addition to my firearms training, use, and instruction, I have maintained and repaired Glock pistols since 2013, and from 2012 to 2014 I hosted a radio show entitled "Shooting It Straight," which was dedicated to firearms training and education.

I hold several certifications or licenses related to firearms including the following: Class "DI" Security Officer Instructor; Firearms Instructor in the disciplines of pistol, rifle and shotgun; Personal Protection Instructor; Home Firearms Safety Instructor; Advanced Firearms Training Instructor; Tactical Firearms Instructor; Advanced Personal Protection Instructor; and Concealed Weapons License Holder. Additionally, I previously held certifications as a Class "K" Firearms Instructor, and a Law Enforcement Instructor, but I allowed these certifications to become inactive.

C. **OPINIONS, AND THE BASIS AND REASONS FOR THE OPINIONS**

On September 20, 2018, I went to High Noon Guns, an indoor gun range located in Sarasota, Florida. There, I met Defendant's counsel, Albert J. Bowden, and Jordan E. Pratt, as

2

well as the Plaintiff. Defendant's counsel had requested that Plaintiff produce each item that he possessed or had custody of that he believed to be prohibited by the challenged statute, as well as any weapon or firearm that Plaintiff possessed that could be used with, or modified by, the item.

The Plaintiff produced two different firearms on which he claimed to have installed a prohibited device.

### 1. The SSAR-15 SBS stock

The Plaintiff produced a semi-automatic AR-15 type rifle, and a device manufactured by Slide Fire Solutions, called a "SSAR-15 SBS stock" (the "SSAR-15"). See attached **Images 1, 2, and 3**. The SSAR-15 replaces the buttstock and pistol grip of the rifle.

I first wanted to fire the rifle with the original buttstock and pistol grip; that is, without the SSAR-15. See attached **Images 4 and 5**. In my experience, this configuration—a separate buttstock and pistol grip—is the standard configuration for AR-15 rifles and their variants. While manufacturers offer different types of buttstocks and pistol grips, they perform the same functions. The buttstock provides points of contact for the shooter's shoulder and cheek, and the pistol grip provides the handle by which the shooter grasps the rifle with his trigger hand. I then loaded the weapon with ammunition and fired it several times. I fired the weapon in the manner the weapon was designed to be fired: by pulling the trigger. Each pull of the trigger discharged a single round. To discharge multiple rounds, I had to pull and release the trigger multiple times. When I pulled the trigger, the rifle would discharge a single round, and it would not be ready to fire again until I released the trigger to reset it. In this configuration, the rifle did not discharge more than one round per single operation of the mechanism (the trigger) that caused the discharge. See attached **Image No. 6**.

Then, the Plaintiff removed the original buttstock and pistol grip and installed the SSAR-15. See attached Image No. 7. I again loaded the weapon with ammunition and fired it. See attached **Images No. 8 and 9.** The SSAR-15 allows the rest of the firearm to slide forward and backward within it, and it provides an additional mechanism to cause the discharge of the firearm: forward pressure on the front portion of the firearm. To fire the rifle with the SSAR-15 installed, I never had to flex my trigger finger. Instead, I rested my trigger finger on a shelf or bar molded into the SSAR-15 and used my support (left) hand to push the front portion of the rifle forward. This single operation—forward pressure on the front portion of the firearm—caused the trigger to come into contact with my stationary trigger finger and discharged the firearm. When I continuously applied the correct amount of forward pressure on the front portion of the firearm, the rifle's recoil, acting in conjunction with my application of continuous forward pressure and my stationary trigger finger, caused the rifle to rapidly and repeatedly rock or "bump" back and forth within the SSAR-15, resulting in the discharge of multiple rounds. This "action-reaction" from the recoil and the bumping occurred rapidly and without the need for me to perform any further operation to discharge subsequent rounds. With the SSAR-15 installed, I never had to flex my trigger finger. When I continuously applied the correct amount of forward pressure, the rifle rapidly fired all of the rounds that were contained in the magazine and stopped firing only when the magazine was empty.

Based on the foregoing, it is my opinion that SSAR-15 *is* an item that would fit the definition of bump-fire stock. With the SSAR-15 installed, the rifle functioned like a fully automatic weapon in that only one operation (continuous forward pressure) was necessary for multiple rounds to be discharged. Unlike the rifle with its original buttstock and pistol grip, with

4

the SSAR-15 installed, I was able to discharge multiple rounds with a single operation—an increase in the weapon's rate of fire.

### 2. The Modified Hex Bolt

The Plaintiff then produced another semi-automatic AR-15 type rifle, on which were installed a separate buttstock and pistol grip (not an SSAR-15).  See attached **Image 10**.  The Plaintiff had removed the original hex bolt that attaches the pistol grip to the weapon and replaced it with a hex bolt that he had modified.  See attached **Image 11**.  The modified hex bolt had been drilled through its length and threaded to accept a small screw, which, as installed by the Plaintiff, protruded from the male end of the bolt.  The Plaintiff explained that this modified hex bolt impinged on the fire-control group (the trigger and related components) to reduce the trigger's reset distance—i.e., the distance the trigger must be released in order to be ready for the discharge of a subsequent round.

I first fired the weapon with the modified hex bolt because it was already installed in the weapon.  See attached **Image No. 12**.  After that, the modified hex bolt was removed, and the original, unmodified hex bolt was installed.  I then fired the weapon in that configuration.  See attached **Image No. 13**.  While the modified hex bolt did appear to alter the trigger's reset characteristics, the operation of the weapon was otherwise unaffected.  With both bolts, the weapon required the same operation to fire it. In either configuration, a single pull of the trigger resulted in the discharge of a single round, and the rifle would not fire a subsequent round unless the trigger was released and pulled again.

Based on the foregoing, it is my opinion that the modified hex bolt *is not* an item that would fit the definition of bump-fire stock.  In both configurations, the rifle functioned as a traditional semi-automatic firearm—i.e., it would not fire more than one round per pull of the

5

trigger. In both configurations, only a single round was discharged for each operation of the mechanism (the trigger) that caused the firearm to discharge. In other words, the Plaintiff's modified hex bolt did not increase the weapon's rate of fire.

Although Plaintiff also produced something he described as a "modifying screwdriver," this was nothing more than a small screwdriver that Plaintiff used to install the hex bolt in the rifle. See attached **Image No. 14**. It was not an item that was either installed on, or in, the rifle. Thus, it could *not* fit the statutory definition of bump-fire stock.

### D. DATA OR INFORMATION CONSIDERED IN FORMING THE OPINIONS

In forming my opinions, I considered the statutory language of Section 790.222, and inspected and tested everything that Plaintiff produced in response to Defendant's First Amended Request for Production of Documents and Tangible Things (attached hereto): the SSAR-15 SBS stock, the Modified Hex Bolt, the Modifying Screwdriver, and the Plaintiff's firearms.

### E. OTHER CASES DURING THE PAST 4 YEARS WHERE THERE HAS BEEN TESTIMONY AT TRIAL OR BY DEPOSITION

None.

### F. COMPENSATION TO BE PAID FOR WORK IN THIS CASE

My rates of compensation vary depending on the type of service. In this case, they are as follows: $45 per hour for consultation and communication, review of documents, examination of physical evidence, experiments, and tests; $50 per hour for any standby time; $55 per hour for

6

travel time; $100 per hour for report preparation; and $175 per hour for testimony.

        Respectfully Submitted,

        _____
        JOSEPH CHARLES NAPLES
        Palmetto, Florida

I declare under penalty of perjury that the foregoing is true and correct pursuant to Title 28 U.S.C. §1746.

Executed this 25Th day of September 2018.

        _____
        JOSEPH CHARLES NAPLES

## ATTACHMENT TO THE EXPERT REPORT OF JOSEPH CHARLES NAPLES – IMAGES



Image 1



Image 2



*Image 3*



*Image 4*



*Image 5*



*Image 6*



*Image 7*



*Image 8*

11



*Image 9*



*Image 10*

12



*Image 11*



*Image 12*



*Image 13*



*Image 14*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ADAM WAYNE TYLER ROBERTS,**

**Plaintiff,**

**v.**                                                                 Case No. 8:18-CV-1062-T-33TGW

**RICK SWEARINGEN,**

    **Defendants.**
_____/

## DEFENDANT'S AMENDED FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS
### (As To The Date And Location Only)

Defendant Rick Swearingen, through undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Plaintiff produce and permit the inspection, testing, copying, or sampling of the following documents or tangible things on Thursday, September 20, 2018, at High Noon Guns, 4583 Bee Ridge Road, Sarasota, FL 34233 at 9:00 a.m.:

1. Any items, including conversion kits, tools, accessories, or devices, that Plaintiff possesses or has custody of, that he believes to be prohibited as "bump-fire stock" pursuant to Section 790.222, Florida Statutes, and as referred to in Plaintiff's Complaint.

2. Any weapons or firearms, including rifles, handguns, and semiautomatic weapons, that Plaintiff possesses or has custody of, which can be used with, or modified by, an item that Plaintiff believes to be prohibited as a "bump-fire stock" pursuant to Section 790.222, Florida Statutes, and as referred to in Plaintiff's Complaint.

15

3. If not already covered in paragraphs 1-2, above, any fire control modifications, trigger modifications trigger packs, trigger assemblies, trigger jobs, multi-stage triggers, "other accouterments," adjustable triggers, short-reset triggers, and 2-stage triggers, that Plaintiff possesses or has custody of, that he believes to be prohibited as "bump-fire stock" pursuant to Section 790.222, Florida Statutes, and as referred to in Plaintiff's May 1, 2018, Complaint, including in Paragraphs 12, 27-28, 61-62, 67-68.

4. If not already covered in paragraphs 1-2, above, any weapons or firearms, including rifles, handguns, and semiautomatic weapons, that Plaintiff possesses or has custody of, which can be used with, or modified by, any fire control modifications, trigger modifications trigger packs, trigger assemblies, trigger jobs, multi-stage triggers, "other accouterments," adjustable triggers, short-reset triggers, and 2-stage triggers, that Plaintiff possesses or has custody of, that he believes to be prohibited as "bump-fire stock" pursuant to Section 790.222, Florida Statutes, and as referred to in Plaintiff's May 1, 2018, Complaint, including in Paragraphs 32, 61-62, and 76-68.

5. If not already covered in paragraphs 1-2, above, the Slide Fire Solutions SSAR-15 SBS; Personally modified AR-15 fire control group and receiver for shorter reset; modifying screwdriver; and fire control group to be used as a 'kit' and/or accessory, that Plaintiff referred to in his June 15, 2018, and July 16, 2018, emails to Christopher Baum and others at the Office of the Attorney General.

6. Any written manuals or instructional information that describes how to implement or utilize any item that will be produced in response to paragraphs 1-5, above.

        Respectfully Submitted,

        PAMELA JO BONDI
        ATTORNEY GENERAL

        /s/ *Albert J. Bowden*
        Albert J. Bowden
        Special Counsel
        Florida Bar No. 802190
        Al.Bowden@myfloridalegal.com
        Office of the Attorney General
        The Capitol, PL-01
        Tallahassee, Florida 32399-1050
        Telephone: (850) 414-3300, Ext. 4716

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via email to Plaintiff Adam Wayne Tyler Roberts at adam@bumpstocklegalaction.com and via U.S. Mail at 3320 13th Street, East Bradenton, FL 34208-4254, this 6th day of September, 2018.

        /s/ *Albert J. Bowden*
        Albert J. Bowden