UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADAM WAYNE TYLER ROBERTS,

    Plaintiff,

v.                           Case No.: 8:18-cv-1062-T-33TGW

RICK SWEARINGEN,

    Defendant.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendant Rick Swearingen's Motion for Summary Judgment (Doc. # 69), filed on November 16, 2018. Pro se Plaintiff Adam Wayne Tyler Roberts failed to respond to the Motion. For the reasons that follow, the Motion is granted to the extent the Court construes it as a Motion to Dismiss for lack of standing.

**I.**    **<u>Background</u>**

Section 790.222, Florida Statutes, prohibits bump-fire stocks: "A person may not import into this state or transfer, distribute, sell, keep for sale, offer for sale, possess, or give to another person a bump-fire stock. A person who violates this section commits a felony of the third degree." Fla. Stat. § 790.222. This section also provides:

> [T]he term 'bump-fire stock' means a conversion kit, a tool, an accessory, or a device used to alter the

1

>rate of fire of a firearm to mimic automatic weapon fire or which is used to increase the rate of fire to a faster rate than is possible for a person to fire such semiautomatic firearm unassisted by a kit, a tool, an accessory, or a device.

Id.

Roberts initiated this action on May 1, 2018, asserting various claims against Swearingen, Commissioner of the Florida Department of Law Enforcement, and Pam Bondi, Attorney General of Florida. (Doc. # 1). In the Complaint, Roberts sought a declaration that Section 790.222 violates article X, section 6 of the Florida Constitution as well as the Second, Fifth, and Fourteenth Amendments of the United States Constitution. (Id.). Furthermore, Roberts insisted the statute is void for vagueness.

Swearingen and Bondi moved to dismiss. (Doc. # 27). On August 21, 2018, the Court granted the motion in part and denied it in part. (Doc. # 37). The Court dismissed Bondi as a Defendant. (Id.). The Court also dismissed with prejudice all but the two Second Amendment claims. (Id.). In denying the motion as to the Second Amendment claims, the Court noted that Roberts was not challenging Section 790.222 in its entirety and adopted Swearingen's reading of the Complaint: "Roberts' Second Amendment claim turns on other types of firearm modifications, not on the prohibition of actual bump-

fire stocks because Counts 5 and 6 mention only trigger modifications such as 2-stage triggers and short-reset triggers." (Id. at 12)(citation and internal quotation marks omitted). Thus, in this action, Roberts is not arguing that Section 790.222 is unconstitutional because it prohibits true bump-fire stocks. Rather, Roberts argues that Section 790.222 is unconstitutional because he believes the second part of the bump-fire stock definition — regarding "increas[ing] the rate of fire" — covers a range of trigger modifications that are not true bump-fire stocks.

The case proceeded through discovery. Swearingen hired a firearms expert, Joseph Naples, who inspected and tested three items Roberts owns that are relevant to his Second Amendment claims. (Doc. # 61-2). These three items were a Slide Fire Solutions stock, a modified hex bolt, and a small screwdriver. (Id. at 3-6). Naples analyzed whether each item altered the rate of fire for a semi-automatic weapon. The rate of fire for an un-modified semi-automatic weapon is "one round per single operation of the mechanism" — i.e. one bullet fired per pull of the trigger. (Id. at 3). A device increases the rate of fire of a semi-automatic firearm, and is therefore a bump-fire stock under Section 790.222, if it allows a person

to fire more than one round per single operation of the mechanism that causes the firearm to discharge. (Id. at 4).

Naples concluded that the Slide Fire Solutions stock did alter the rate of fire of the gun tested and so qualified as a bump-fire stock under Section 790.222. (Id. at 4-5). Naples noted that, after the Slide Fire Solutions stock was installed on the semi-automatic weapon, only one operation — "forward pressure on the front portion of the firearm" — was required to release multiple rounds of ammunition. (Id. at 5). "When [Naples] continuously applied the correct amount of forward pressure, the rifle rapidly fired all of the rounds that were contained in the magazine and stopped firing only when the magazine was empty." (Id.). Therefore, the Slide Fire Solutions stock is a true bump-fire stock. (Id.).

In contrast, Naples concluded that the two items Roberts argues are unconstitutionally outlawed under the second definition of Section 790.222 — the modified hex bolt and screwdriver — do not alter the rate of fire of a semi-automatic weapon. (Id. at 5-6). Naples noted that when the modified hex bolt was installed on a semi-automatic firearm using the screwdriver, the modified firearm still "would not fire more than one round per pull of the trigger" so the "modified hex bolt did not increase the weapon's rate of

4

fire." (Id.). Regarding the screwdriver, Naples explained that it could not be a bump-fire stock under Section 790.222 because the screwdriver is merely used to install the modified hex bolt — the screwdriver "was not an item that was either installed on, or in, the rifle" and did not increase the semi-automatic firearm's rate of fire. (Id. at 6).

During discovery, Roberts' deposition was taken. Throughout the deposition, Roberts took issue with Naples's expert report. (Doc. # 69-4 at 40:16-43:13, 88:19). He argued that the screwdriver is a bump-fire stock under Section 790.222 because it "was a tool that was used to alter the rate of fire, to mimic automatic weapon fire, which is used to increase the rate of fire faster." (Id. at 46:10-47:10). Roberts also contended that the modified hex bolt qualified as a bump-fire stock under Section 790.222 because it reduces the pressure necessary to both pull and reset the trigger so "makes it faster and easier to bump fire the weapon." (Id. at 57:24-58:9).

Nevertheless, Roberts acknowledged that, using a semi-automatic weapon with the modified hex bolt installed, a person "would pull the trigger and get one bullet out of the weapon" and would ordinarily have to pull the trigger again to release another bullet. (Id. at 79:23-80:21). Roberts also

5

testified that he believed the Slide Fire Solutions stock was not made unlawful by the language of Section 790.222. (Id. at 49:2-3, 54:3-14, 102:7-9). In an interrogatory response, Roberts elaborated on his opinion that the Slide Fire Solutions stock is not a bump-fire stock and is not prohibited by Section 790.222 because it is merely a "comfort device" that "does not enable bump firing" or "increase the rate of fire of the firearm." (Doc. # 69-3 at 4). Thus, because he does not believe Section 790.222 outlaws the Slide Fire Solutions stock at all, Roberts is not challenging the statute in relation to the Slide Fire Solutions stock.

Importantly, Roberts also admitted during his deposition that he no longer possesses the modified hex bolt and screwdriver. (Doc. # 69-4 at 61:22-25, 62:12-16). Roberts testified that he mailed the modified hex bolt and screwdriver, as well as the Slide Fire Solutions stock, to a friend in Texas. (Id. at 59:1-60:19, 61:22-25, 62:12-20). Regarding the modified hex bolt, Roberts testified he "told [his friend in Texas] to keep it because they are simple to make." (Id. at 62:10-11). Roberts similarly expressed that there was no agreement for the screwdriver to be mailed back to him but that, "if [he] wanted it back, [Roberts] suppose[d] [he] could ask for it." (Id. at 62:21-25).

6

On September 25, 2018, Roberts moved for a temporary restraining order and a preliminary injunction. (Doc. ## 42, 43). The undersigned denied the motion for a temporary restraining order but referred the motion for preliminary injunction to the Magistrate Judge. (Doc. ## 44, 48). The Magistrate Judge held a hearing on that motion on October 29, 2018. (Doc. # 62). During the hearing, Roberts confirmed that he is challenging Section 790.222's constitutionality only to the extent he believes that statute prohibits possession of certain other items besides true bump-fire stocks. (Doc. # 69-2 at 5:15-6:25, 11:17-21). Roberts also expressed concern during the hearing that someday a new Florida Attorney General may be appointed who would charge him with violating Section 790.222 for possession of the modified hex bolt and screwdriver. (Id. at 7:18-22, 9:17-19). In response, Swearingen emphasized that a future prosecution for possession of the modified hex bolt or screwdriver would be highly unlikely given the State of Florida's position in this litigation that those items are not illegal and his own expert's report to that effect. (Id. at 14:21-15:7).

On November 16, 2018, Swearingen moved to exclude Roberts from serving as an expert witness, (Doc. # 66), and also moved for summary judgment, (Doc. # 69). Roberts did not

7

respond to the motion to exclude expert testimony and so the Court granted that motion as unopposed on December 18, 2018. (Doc. # 70). And, despite the Court sua sponte providing Roberts an extension of time to respond to the Motion for Summary Judgment (Doc. # 71), Roberts failed to file a response in opposition to the Motion.

## II. Discussion

First, Swearingen argues that Roberts does not have standing to assert the Second Amendment claim. (Doc. # 69 at 8-11). Thus, regarding Swearingen's argument on standing, the Court construes the Motion for Summary Judgment as a Motion to Dismiss for lack of standing under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

Because the Court determines that Roberts lacks standing, the Court need not address the merits arguments Swearingen also raises in the Motion.

### A. Legal Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. And Rule 12(h)(3) provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R.

Civ. P. 12(h)(3). Thus, the Court may consider motions to dismiss for lack of subject matter jurisdiction at any time.

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). In factual attacks, the Court delves into the arguments asserted by the parties and the credibility of the evidence presented. Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997). As stated in Morrison, "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." 323 F.3d at 925. In deciding a motion to dismiss filed under Rule 12(b)(1), this Court is not required to assume that the allegations in the Complaint are true. Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1251 (M.D. Fla. 2003); see also Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001)(factually-based attacks on subject matter jurisdiction go beyond the pleadings and permit testimony and affidavits to be considered).

A plaintiff bears the burden of demonstrating that the Court has jurisdiction. Menchaca v. Chrysler Credit Corp.,

613 F.2d 507, 511 (5th Cir. 1980). Once subject matter jurisdiction has been questioned, a plaintiff is required to "clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975).

### B. Analysis

Swearingen challenges Roberts' standing to bring a Second Amendment claim concerning Section 790.222. (Doc. # 69 at 8). According to Swearingen, "[b]ecause [Roberts] has not established any likelihood that the State would arrest or prosecute him for possessing the homemade trigger modification at issue, and because [Roberts] no longer possesses or seeks to possess that homemade trigger modification, [Roberts] has no cognizable Article III injury." (Id.).

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016)(citing Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in

10

federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of establishing' standing." Clapper, 133 S. Ct. at 1148 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

The injury-in-fact requirement is the most important element. Spokeo, 136 S. Ct. at 1547. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Id. The Supreme Court in Spokeo emphasized that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

11

"One recurring issue in [standing] cases is determining when the threatened enforcement of a law creates an Article III injury. When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). The Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." Id. at 159. "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Id. (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)).

Here, Roberts no longer possesses either of the two items he alleges fall under Section 790.222's prohibition — the modified hex bolt and the screwdriver.[1] Specifically, the

---

[1] Roberts also no longer possesses the Slide Fire Solutions stock. (Doc. # 69-4 at 59:19-60:2). While he testified his friend in Texas would return it if asked, Roberts did not express an intention to have the stock returned to him. (Id. at 60:3-19). Regardless, the evidence before the Court establishes that the Slide Fire Solutions stock is a true bump-fire stock, (Doc. # 61-2 at 4-5), and Roberts has explained that he does not base his claim that Section 790.222 is unconstitutional on its prohibition of true bump-fire stocks, (Doc. # 69-2 at 5:15-6:25). And, while he disagrees

modified hex bolt and screwdriver are now in Texas, and Roberts did not disclose an intention to have the items returned to him. (Doc. # 69-4 at 61:22-25, 62:10-25). Nor did Roberts testify that he intended to purchase another screwdriver or make another modified hex bolt in the near future. See Colo. Outfitters Ass'n v. Hickenlooper, 823 F.3d 537, 551 (10th Cir. 2016)(rejecting argument that a plaintiff could establish standing to challenge a law prohibiting the sale of new large capacity magazines (LCMs) when she acknowledged the LCMs she owned were grandfathered in under the law, but insisted the law impacted her because "'[e]ventually,' her LCMs will wear out" at which point she would want to purchase new ones).

Furthermore, Swearingen has now explained that the State of Florida does not interpret the modified hex bolt and screwdriver as falling under the purview of Section 790.222. (Doc. # 27 at 17-18; Doc. # 69-2 at 9:8-12, 12:22-13:7).

---

with Swearingen's expert that the Slide Fire Solutions stock is a true bump-fire stock, Roberts acknowledged that he was not challenging Section 790.222 in relation to the Slide Fire Solutions stock anyway because he does not believe Section 790.222 outlaws the Slide Fire Solutions stock at all. (Doc. # 69-4 at 49:2-3, 54:3-14, 102:7-9). Thus, for all these reasons, Roberts' ownership of the Slide Fire Solutions stock does not create standing for Roberts to bring his Second Amendment claim as he has chosen to craft it.

Indeed, there is no evidence that Roberts was ever threatened with arrest or prosecution for possession of the modified hex bolt or screwdriver. See Zaitzeff v. City of Seattle, No. 2:16-CV-00244-BAT, 2016 WL 6084930, at *5 (W.D. Wash. Oct. 18, 2016), aff'd, 703 F. App'x 594 (9th Cir. 2017)("Mr. Zaitzeff's allegations reveal he has received not so much as even a 'verbal warning' that he might be subject to criminal liability if he engages in the conduct he describes [including carrying swords in public]. In short, Mr. Zaitzeff fails to demonstrate his injury is actual or imminent or certainly impending, and he cannot, therefore, demonstrate he suffers from an injury in fact at this time. The Court therefore finds Mr. Zaitzeff does not have standing to bring his Second Amendment cause of action in this Court."). Finally, Swearingen's own expert has concluded that the modified hex bolt and screwdriver do not alter the rate of fire of a firearm and so do not qualify as bump-fire stocks under Section 790.222. (Doc. # 61-2 at 5-6).

Given Swearingen's position throughout this litigation — supported by the report of his firearms expert — that the statute does not apply to Roberts' modified hex bolt and screwdriver and the fact that Roberts no longer possesses those items, the Court finds that Roberts has not established

an injury-in-fact sufficient to establish standing. In short, there is no evidence to support that Roberts will be prosecuted in the future if he obtains the modified hex bolt and screwdriver again.

True, Roberts asserted during the preliminary injunction hearing that a new Florida Attorney General may eventually be appointed who would charge him with violating Section 790.222 if he later possesses another modified hex bolt and screwdriver. (Doc. # 69-2 at 7:18-22, 9:17-19). But this injury is entirely hypothetical. See Zaitzeff, 2016 WL 6084930, at *4 ("A credible threat of prosecution cannot rest on fears that are 'imaginary or speculative.'" (quoting Babbitt, 442 U.S. at 298)). Furthermore, given the State's position in this litigation and the expert report prepared for this case, bringing charges against Roberts for possession of the two items at issue is highly unlikely.

Because Roberts has failed to establish the existence of an injury-in-fact, Roberts lacks standing to bring his Second Amendment claim challenging Section 790.222. Therefore, this case is dismissed without prejudice for lack of standing.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Rick Swearingen's Motion for Summary Judgment (Doc. # 69), which the Court construes as a Motion to Dismiss for lack of standing under Rules 12(b)(1) and 12(h)(3), is **GRANTED**.

(2) This case is dismissed without prejudice because pro se Plaintiff Adam Wayne Tyler Roberts lacks standing.

(3) The Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of January, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE